**DUTTON–LAINSON COMPANY,**
Appellant,

v.

**DO IT BEST CORPORATION,**
Appellee.

No. 04–04–00679–CV.

Court of Appeals of Texas,
San Antonio.

Sept. 28, 2005.

---

Andrea N. Moore, Law Office of Samuel E. Dunn, Houston, for appellant.

Adraon D. Greene, Prichard Hawkins McFarland & Young, L.L.P., Houston, Elizabeth J. Lindell, Brendan K. McBride, Ryan A. Byrd, Prichard Hawkins McFarland & Young, L.L.P., San Antonio, appellee.

Mike Huddleston, Sarah Huddleston, Karnes City, pro se.

Sitting: CATHERINE STONE, Justice, SARAH B. DUNCAN, Justice, PHYLIS J. SPEEDLIN, Justice.

## OPINION

Opinion by CATHERINE STONE, Justice.

In this appeal, we must determine whether a manufacturer has a statutory

duty to indemnify a seller for losses incurred in a products liability action in the absence of proof that the allegedly defective product was produced by that manufacturer. Because we hold that section 82.002 of the Texas Products Liability Act imposes a duty on such a manufacturer to indemnify the seller, we affirm the trial court's judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Mike Huddleston and his wife filed a products liability lawsuit against Alamo Lumber Company, Inc., Dutton–Lainson, and Do It Best Corporation ("DIB"). Huddleston alleged he was injured when a brake winch handle malfunctioned and injured him. The winch, which was in Huddleston's constructive possession, was disposed of prior to the lawsuit being filed. Huddleston alleged the winch had been manufactured by Dutton–Lainson. Huddleston further alleged DIB, a distributor of winches, sold the defective winch to his employer, Alamo Lumber.

DIB filed a cross-claim against Dutton–Lainson requesting statutory indemnification pursuant to section 82.002 of the Texas Products Liability Act. On September 2, 2003, DIB filed a motion for summary judgment on its indemnity claim. DIB supported its motion with several exhibits, including the affidavit of Richard Linker verifying that DIB had been a wholesaler and distributor of Dutton–Lainson products, including brake winches, since 1988. DIB also attached the affidavit of attorney Dwayne Day, who stated that DIB incurred reasonable attorney's fees, costs, and expenses of $21,805.35 in defending the products liability action through August 28, 2003.

In its reply to DIB's motion for summary judgment, Dutton–Lainson argued that the identity of the winch and its manufacturer were disputed and unknown, and could never be verified because Huddleston had disposed of the winch before filing suit. Dutton–Lainson complained that it had not been proven to be in the chain of distribution and that "a seller is not entitled to indemnification from just any manufacturer." Dutton–Lainson attached the affidavits of Bruce Dillin and Reinhold Haase in order to show genuine issues of material fact remained on DIB's indemnity claim. The alleged defective winch had been described as "silver" in Huddleston's deposition, and Dillin testified Dutton–Lainson never sold silver-colored winches to DIB. Haase testified in his affidavit that although Dutton–Lainson is a manufacturer of the model number winch identified by Huddleston's counsel, Dutton–Lainson could not have been in the chain of distribution. The trial court held a hearing on DIB's motion for summary judgment on September 30, 2003, but took the motion under advisement.

On April 22, 2004, the trial court granted the no evidence motions for summary judgment filed by DIB and Dutton–Lainson as to Huddleston's products liability claims, thereby dismissing the underlying claims against them. Thereafter, DIB submitted an additional affidavit of Dwayne Day wherein Day testified that DIB had incurred $29,000.64 in attorneys fees, costs, and expenses in defending the products liability action and in pursuing DIB's indemnity claims against Dutton–Lainson through June 24, 2004. On June 30, 2004, the trial court entered an order granting DIB's motion for summary judgment on its indemnity claim and awarded DIB $29,000.64. The order stated that Dutton–Lainson was required to continue paying DIB's additional attorney's fees, costs, and expenses incurred in its defense of its indemnity claim until final resolution of the cause.

Dutton–Lainson subsequently filed a motion for new trial from the trial court's interlocutory order, and DIB filed a response. The trial court denied Dutton–Lainson's motion for new trial on August 17, 2004, and Dutton–Lainson filed a notice of appeal on September 16, 2004. On October 15, 2004, DIB filed a motion for final summary judgment and attached an affidavit showing it had incurred additional expenses of $7,062.61 in defending its indemnity claim since June 24, 2004. The trial court entered an order granting DIB's motion for final summary judgment and awarded it an additional $7,062.61 for costs expended to defend its indemnity claim, and $10,000 for conditional appellate attorney's fees.

### SUMMARY JUDGMENT

In its first issue, Dutton–Lainson contends the trial court erred in granting DIB's motion for summary judgment because the trial court misconstrued the requirements of the Texas Products Liability Act. Dutton–Lainson asserts that under the statute, a manufacturer cannot be liable for indemnity when there is no evidence that the manufacturer produced the specific product at issue. Dutton–Lainson also contends DIB did not establish it qualified as a seller under the statute. In its second issue, Dutton–Lainson asserts genuine issues of material fact existed because Dutton–Lainson offered proof it did not manufacture the winch in question or sell it to DIB.

■ The standards for reviewing a motion for summary judgment are well established: 1) the movant for summary judgment has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law; 2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and 3) every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. TEX.R. CIV. P. 166a(c); *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex. 1985). We review a summary judgment *de novo* to determine whether a party's right to prevail is established as a matter of law. *Dickey v. Club Corp. of Am.,* 12 S.W.3d 172, 175 (Tex.App.-Dallas 2000, pet. denied).

DIB's indemnity claim is asserted under section 82.002 of the Texas Civil Practices and Remedies Code, which provides:

> A manufacturer shall indemnify and hold harmless a seller against loss arising out of a products liability action, except for any loss caused by the seller's negligence, intentional misconduct, or other act or omission, such as negligently modifying or altering the product, for which the seller is independently liable.

TEX. CIV. PRAC. & REM.CODE ANN. § 82.002(a) (Vernon 2005). Other subsections illuminate the duty created by section 82.002(a). "Manufacturer" is defined as "a person who is a designer, formulator, constructor, rebuilder, fabricator, producer, compounder, processor, or assembler of any product or any component part thereof and who places the product or any component part thereof in the stream of commerce." *Id.* at § 82.001(4). The statute requires manufacturers to indemnify sellers unless the seller directly caused the injury. *Id.* at § 82.002(a). Indemnification includes the seller's fees and costs in enforcing its statutory right. *Id.* at § 82.002(b). Additionally, the manufacturer is liable to a seller no matter how the products liability action is resolved, and the statute supplements the seller's rights under common law or contract. *Id.* at § 82.002(e)(2). Thus, the statute deliberately places the duty to indemnify on the manufacturers regardless

of how the action is concluded unless a seller is found independently liable.

■ Dutton–Lainson first contends DIB did not establish its right to indemnity as a matter of law because it did not provide competent summary judgment proof that Dutton–Lainson manufactured the winch at issue. Dutton–Lainson further contends that the evidence raised genuine issues of material fact as to whether it was the manufacturer of the winch and whether it was in the chain of distribution. However, applying the language of the statute, the seller is only required to prove that it is a seller who suffered a loss in a products liability action as defined by the statute, and that the defendant qualifies as a statutory manufacturer. The statute does not place an additional burden on the seller to prove the manufacturer was the manufacturer of the product in question or was in the chain of distribution. *See Burden v. Johnson & Johnson Medical, Inc.,* 332 F.Supp.2d 1023, 1029 (S.D.Tex.2004) (holding that requiring sellers to prove that several manufacturers listed in the pleadings were in the chain of distribution in order to recover indemnity "would force the parties to litigate issues that are unnecessary"). In *Meritor Automotive, Inc. v. Ruan Leasing Co.,* the Texas Supreme Court held that "a manufacturer's duty to indemnify the seller is invoked by the plaintiff's pleadings and joinder of the seller as defendant." 44 S.W.3d 86, 91 (Tex.2001). Here, DIB sup-

ported its request for summary judgment with Linker's affidavit and the plaintiff's pleadings, which alleged a brake winch manufactured by Dutton–Lainson caused Huddleston's injuries. Under the statute, DIB was entitled to indemnity as a matter of law.[1]

■ Dutton–Lainson also contends DIB did not prove it qualifies as a "seller" under the statute. "Seller" is defined as any person "engaged in the business of distributing or otherwise placing, for any commercial purpose, in the stream of commerce for use or consumption a product or any component part thereof." TEX. CIV. PRAC. & REM.CODE ANN. § 82.001(3). That definition includes DIB, which sells brake winches for use by its customers. Although Dutton–Lainson complains DIB did not offer proof it sold the defective brake winch to Alamo Lumber, the Texas Supreme Court has already determined that manufacturers are liable to innocent sellers even if the plaintiff has not shown that he bought the product from the seller in question. *See Fitzgerald v. Advanced Spine Fixation Sys., Inc.,* 996 S.W.2d 864, 867 (Tex.1999) (holding that section 82.002(a) of the Products Liability Act does "not explicitly require that the seller be proven to have been in the chain of distribution").

## PLENARY POWER

■ In its third issue, Dutton–Lainson contends, without citing any authority,

---

1. Although the statute may appear to be facially unfair to innocent manufacturers named in a lawsuit, it was within the Legislature's province to weigh the conflicting policy implications of the statutory indemnity in determining whether losses arising out of a products liability action should be borne by the innocent seller or the innocent manufacturer. The Legislature chose to give "preference to sellers with no independent liability." *Fitzgerald v. Advanced Spine Fixation Sys., Inc.,* 996 S.W.2d 864, 867 (Tex.1999); *see* *also Meritor Automotive, Inc.,* 44 S.W.3d at 91 (citing legislative history explaining that Act was intended to expand the indemnity rights of sellers as long as the sellers are not negligent or otherwise at fault); *Burden,* 332 F.Supp.2d at 1026–1028 (discussing purposes and policies served by Act). Furthermore, it appears that the manufacturer can avoid liability for indemnity by offering a defense to the seller upon receiving the requisite statutory notification. *See Burden,* 332 F.Supp.2d at 1028–1029.

that the trial court lacked plenary power when it signed the order granting final summary judgment on DIB's indemnity claim. We reject this argument because the record indicates the June 30, 2004 order did not constitute a final judgment. A judgment is final for purposes of appeal if it disposes of all pending parties and claims in the record. *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex.2001). When determining whether a judicial decree constitutes a final judgment, we look not to form, but to the language of the decree and the record in the case. *Id.* In its order, the trial court stated:

> Because there is no genuine issue of fact, the Court, in all things, GRANTS Do it Best Corp.'s Motion for Interlocutory Summary Judgment and ORDERS that Do it Best Corp. have and recover the sum of $29,000.64 from Dutton–Lainson Company for product liability losses accrued through June 24, 2004. The Court further ORDERS that Dutton–Lainson Company continue to pay any and all additional attorney's fees, costs and expenses incurred in the defense of Do it Best Corp. from June 24, 2004 forward until final resolution of this cause.

Under the Texas Products Liability Act, the seller is entitled to indemnification for "court costs and other reasonable expenses, reasonable attorney fees, and *any reasonable damages incurred by the seller to enforce the seller's right to indemnification under this section.*" TEX. CIV. PRAC. & REM.CODE ANN. § 82.002(g) (Vernon 2005) (emphasis added). In its order, the trial court determined DIB was entitled to indemnity as a matter of law, but left unresolved the amount of indemnity. The trial court clearly did not intend its order to dispose of the case because the effect of the order was to permit DIB to recover additional expenditures made in defending its indemnity claim. *See Lehmann*, 39 S.W.3d at 205 (requiring a clear indication that the trial court intends an order to completely dispose of the entire case for it to be considered final and appealable). Because the trial court's June 30 order did not constitute final judgment, we overrule Dutton–Lainson's third issue.[2]

### ATTORNEY'S FEES AND COSTS

■ In its fourth issue, Dutton–Lainson contends there is insufficient evidence to support DIB's indemnity award of $29,000.64 in the trial court's interlocutory order. At the time of the September 30, 2003 hearing on DIB's motion for interlocutory summary judgment, DIB submitted the affidavit of Dwayne Day requesting indemnity for $21,805.35. Several months after the court took DIB's motion under consideration, DIB filed Day's second affidavit proving $29,000.64 in costs through June 24, 2004. Dutton–Lainson complains that Day's second affidavit was untimely filed after the summary judgment hearing and that we must presume the trial court did not consider that evidence.

■ A movant's summary judgment affidavit should be filed at least twenty-one days before the hearing. TEX.R. CIV. P. 166a(c). For an untimely affidavit to be considered summary judgment evidence, the record must indicate affirmatively that the trial court permitted late filing of the affidavit. *Vasquez v. Carmel Shopping Ctr. Co.*, 777 S.W.2d 532, 535 (Tex.App.-Corpus Christi 1989, writ denied). Here, the record indicates the trial court accepted the late filing of Day's updated affidavit. The trial court's interlocutory order

2. We have reviewed and considered Dutton–Lainson's accompanying motion to vacate the trial court's final order of November 16, 2004. Because we have determined that Dutton–Lainson's third issue lacks merit, we deny the motion to vacate.

awards more than was requested in DIB's motion and specifically states that DIB shall recover $29,000.64 for "product liability losses accrued through June 24, 2004." We overrule Dutton–Lainson's argument that there was insufficient evidence to support the award of $29,000.64.

Dutton–Lainson also contends DIB was not entitled to any additional attorney's fees or appellate attorney's fees because Day's third affidavit was filed after the court's plenary power expired. We disagree. As discussed previously, the trial court's June 30, 2004 was interlocutory. The record reflects that DIB submitted Day's affidavit supporting DIB's requested appellate attorney's fees and the additional award of $7,062.61 with its motion for final summary judgment on October 15, 2004. Dutton–Lainson received proper notice and an opportunity to file responsive evidence and objections in compliance with Rule 166a. We overrule Dutton–Lainson's fourth issue.

### CONCLUSION

Having overruled all of Dutton–Lainson's appellate issues, we affirm the judgment of the trial court.