**ANSELL HEALTHCARE PRODUCTS, INC., and Becton Dickinson & Co., Inc., Appellants,**

v.

**OWENS & MINOR, INC. and Owens & Minor Medical, Inc., Appellees.**

No. 06–04–00136–CV.

Court of Appeals of Texas, Texarkana.

Submitted Dec. 14, 2005.

Decided March 31, 2006.

R. Michael Duffy, Terry M. Hackett, Gardner, Carton & Douglas, LLP, Chicago, IL, Gene F. Creely II, Cozen O'Connor, PC, Houston, for Ansell Healtchcare Products Inc.

Andrew W. Schwartz, Barry M. Epstein, Sills, Cummis, Epstein & Gross, PC, Newark, NJ, Jeffery C. Lewis, Atchley, Russell, Waldrop & Hlavinka, LLP, Texarkana, for Becton Dickinson & Co., Inc.

Brent M. Langdon, Holman & Langdon, LLP, Texarkana, Robert F. Redmond, Jr., Williams Mullen, Richmond, VA, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice CARTER.

Texas law allows an innocent seller to be indemnified by a manufacturer when the seller is sued in a products liability action. TEX. CIV. PRAC. & REM.CODE ANN. § 82.002 (Vernon 2005). Based on that statute, the trial court granted the seller-distributor, Owens & Minor, Inc., and Owens & Minor Medical, Inc. (O & M), a judgment against two manufacturers of latex gloves, Ansell Healthcare Products, Inc., and Becton Dickinson & Company, Inc. (BD).

**Background Facts**

Janet McCabe found that the latex gloves she had been using in her occupation caused an allergic reaction. In January 2000, she sued more than ten manufacturers of latex gloves supplied to her employers as well as the seller-distributor, O & M. That case settled, and all of the defendants were released by McCabe. However, that was not the end of this lengthy and expensive litigation, but only the beginning.

O & M filed suit against five of the manufacturers, seeking indemnification for its attorney's fees and litigation costs. Claims against three of these were resolved, leaving O & M's claims against Ansell and BD. Texas law provides by statute that the manufacturer must indemnify a seller for the seller's losses, including attorney's fees, arising out of a products liability action. This requirement is imposed regardless of the manner in which the underlying action was concluded and is in addition to any other duty of indemnity established by law, contract, or otherwise. TEX. CIV. PRAC. & REM.CODE ANN. § 82.002.

Apparently, the suit to enforce the attorney's fees was more complicated than the underlying products liability case, as O & M now alleges it is entitled to collect from the two manufacturers not only the more

than $73,000.00 incurred in the original suit, but an additional $310,000.00 for the trial of this case and another $65,000.00 for the appeal. After several summary judgment and other hearings, as well as a bench trial, the trial court found that each of the two manufacturers had an independent obligation for the damages and awarded all of the above to O & M against the two manufacturers as indemnity as authorized by Section 82.002.

Ansell and BD each appeal, raising several issues that can be consolidated as follows:

1. Since some of the gloves that caused the problem in the underlying suit were manufactured by other companies, are Ansell and BD obligated to indemnify O & M?

2. Did Ansell and BD tender an adequate defense to O & M in the underlying suit, thereby making it unnecessary for O & M to incur attorney's fees?

3. Are Ansell and BD jointly and severally liable for the entire loss incurred by O & M?

4. Were the attorney's fees incurred by O & M reasonable and necessary?

5. Did the trial court err in denying Ansell's motion to join other glove manufacturers as third parties?

**Section 82.002 and Manufacturers' Duty to Indemnify**

We begin with a brief discussion of the statute at the center of this litigation. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 82.002. Section 82.002 requires manufacturers to "indemnify and hold harmless a seller against loss arising out of a products liability action, except for any loss caused by the seller's negligence, intentional misconduct, or other act or omission, such as negligently modifying or altering the product, for which the seller is independently liable." TEX. CIV. PRAC. & REM.CODE ANN. § 82.002(a). This duty to indemnify sellers "applies without regard to the manner in which the action is concluded" and "is in addition to any duty to indemnify established by law, contract, or otherwise." TEX. CIV. PRAC. & REM.CODE ANN. § 82.002(e)(1), (2).

The Texas Supreme Court has addressed Section 82.002, in matters relevant to our discussion here, in two cases. The first, *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864 (Tex.1999)[1] involved a seller, Fitzgerald, who sold a product that was the subject of a products liability suit. Fitzgerald was dismissed from the suit because, although he had sold the allegedly defective product to others, he had not actually sold the particular product which led to the plaintiff's injuries. Fitzgerald sued the manufacturer for indemnification of his litigation costs. The Texas Supreme Court found Section 82.002 entitled Fitzgerald to indemnification from the one manufacturer named in the plaintiff's case, even though Fitzgerald did not actually sell the instrument which caused injury to the plaintiff in the underlying suit. The manufacturer argued that the statute did not require it to indemnify a seller who was not in the chain of distribution from the manufacturer to the plaintiff. In analyzing Section 82.002, the court stated, "[t]he statute does not explicitly require that the seller be proven to have been in the chain of distribution." *Id.* at 867. Pointing out Section 82.002(e)(1) ("[t]he duty to indemnify . . . applies without regard to the manner in which the action is concluded"), the court held a seller should not "be denied indemnity if it proves that it is innocent but given indemnity if he settles without admitting or denying the fact." *Id.* The court carefully examined Section 82.002, finding that the

1. 996 S.W.2d 864 (Tex.1999).

Legislature clearly meant to create a new duty and "not codify[ ] existing law," the statute's duty to indemnify being "in addition to any duty to indemnify established by law, contract, or otherwise." *Id.* at 868 (quoting TEX. CIV. PRAC. & REM.CODE ANN. § 82.002(e)(2)). The court concluded that the Legislature's intent in constructing Section 82.002 was to "pass on the costs of products litigation from an innocent seller to the manufacturer, 'without regard to the manner in which the action is concluded.' " *Fitzgerald,* 996 S.W.2d at 868 (quoting TEX. CIV. PRAC. & REM.CODE ANN. § 82.002(e)(1)). "The Legislature sought to protect both manufacturers and sellers, but gave preference to sellers with no independent liability. Indemnifying sellers such as Fitzgerald, who did not even sell the product in question, certainly achieves the Legislature's objective of protecting innocent sellers while still providing a remedy for plaintiffs injured by defective products." *Fitzgerald,* 996 S.W.2d at 869.

The Texas Supreme Court also addressed Section 82.002 in *Meritor Auto., Inc. v. Ruan Leasing Co.*[2] The statute imposing liability on a manufacturer toward a seller has one major exception—if the seller caused the loss by its own negligence or conduct, the manufacturer is not obligated to indemnify the seller. The Texas Supreme Court interpreted the exception in the seller's favor and held that the mere allegation by the plaintiff of the seller's negligence did not relieve the manufacturer of its indemnity duty to the seller. The manufacturer was relieved of that duty only by a finding that the seller's independent conduct was a cause of the plaintiff's injury. *Id.* at 91.

With this background, we now proceed to evaluate the points raised by the appellant manufacturers in this case.

1. **What is the extent of the manufacturer's duty to indemnify and did these manufacturers fulfill that duty?**

**Manufacturers must indemnify**

Section 82.002 of the Texas Civil Practice and Remedies Code requires that:

(a) A manufacturer shall indemnify and hold harmless a seller against loss arising out of a products liability action, except for any loss caused by the seller's negligence, intentional misconduct, or other act or omission, such as negligently modifying or altering the product, for which the seller is independently liable.

(b) For purposes of this section, "loss" includes court costs and other reasonable expenses, reasonable attorney fees, and any reasonable damages.

. . . .

(e) The duty to indemnify under this section:

(1) applies without regard to the manner in which the action is concluded; and

(2) is in addition to any duty to indemnify established by law, contract, or otherwise.

TEX. CIV. PRAC. & REM.CODE ANN. § 82.002(a), (b), (e).

■ A "products liability action" is any action against a manufacturer or seller for recovery of damages arising out of personal injury, death, or property damage allegedly caused by a defective product whether the action is based in strict tort liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty, or any other theory or combination of theories. TEX. CIV. PRAC. & REM.CODE ANN. § 82.001(2) (Vernon 2005). Here, there is no question that the statute requires a manufacturer to indemnify an

**2.** 44 S.W.3d 86 (Tex.2001).

innocent distributor of a product when that distributor is sued in a products liability action. The question in this case is: What is the extent of the duty to indemnify and whether these manufacturers fulfilled that duty?

No particular product was determined to have actually caused the allergic reaction suffered by McCabe. Each manufacturer produced and sold latex gloves to O & M, which it in turn sold to others. McCabe alleged the latex gloves caused her injuries. Since the case was settled, it is impossible to determine the extent of damage caused by the different products. As a result, O & M was required to defend the case and incurred attorney's fees. The damages incurred by O & M, like the damage to McCabe, cannot be traced to particular manufacturers. The statute does not require that the product be found defective to allow the seller to recover its losses from the manufacturer. So, even if it were established that one particular manufacturer's gloves did not cause any damage to McCabe, that would not relieve that manufacturer of its indemnity obligation to O & M. In arriving at the determination of the extent of the duty to indemnify, we believe the *Meritor* case is particularly pertinent.

In *Meritor*, the plaintiffs in the underlying action alleged not only that the product was defective, but also that the distributor of the product was negligent. The manufacturer argued that it had no obligation to defend a seller for the seller's own negligence. This appeared to be a logical argument, particularly since the statute itself states that a manufacturer is not required to indemnify a seller for a loss caused by the seller's negligence. This Court had previously observed that a seller may not recover its costs of litigation from a manufacturer associated with defending allegations of the seller's own negligence. *See Hurst v. Am. Racing Equip., Inc.*, 981 S.W.2d 458, 463 (Tex.App.-Texarkana 1998, no pet.). Nonetheless, the Texas Supreme Court rejected that argument because it found that the statute required the manufacturer to indemnify the seller for a "products liability action," which is defined to include any action against a manufacturer or seller for damages caused by a defective product, whether the action is based in strict tort liability, strict products liability, *negligence*, misrepresentation, breach of express or implied warranty, or any other theory or combination of theories. The manufacturers in *Meritor* also argued that the negligence action against the seller did not seek damages "allegedly caused by a defective product," i.e., a marketing, design, or manufacturing defect, and thus it was not part of a products liability action. The Texas Supreme Court acknowledged that the statute, standing alone, could plausibly support that construction. But the court ultimately held that the words of the statute "suggest that we are to include all direct allegations against the seller that relate to plaintiff's injury as part of the 'products liability action' and that we exclude only those losses 'caused by' the seller." *Meritor Automotive*, 44 S.W.3d at 90.

Here, the manufacturers insist that they should only be required to indemnify or defend their particular latex gloves, not the entire case which included latex gloves from other manufacturers, even though the other manufacturers were joined in the underlying products liability action. Clearly, the allegations made by the plaintiff in the underlying case were based on a "products liability action." The statute requires indemnity by the manufacturer to the seller for a "products liability action" caused by a defective product. The Texas Supreme Court in *Meritor* concluded that this language meant the manufacturer must indemnify and defend the seller even from allegations that the seller was negli-

gent. If the manufacturer must fully indemnify the seller in a products liability action even when it is alleged that the seller's own negligence was a proximate cause of the plaintiff's injury, it logically follows that the manufacturer must likewise fully indemnify a seller for a products liability action even when more than one manufacturer of a product allegedly contributed to the damages of the plaintiff. In each instance, the statute requires the manufacturer to indemnify the distributor for the costs incurred by the distributor in a products liability action without regard to the defective nature of the manufacturer's product.

Ansell and BD argue that they cannot fulfill this obligation because it would require them to defend another manufacturer's product, and to require such would lead to absurd results. Of course that same difficulty is presented to the distributor. What options are available to a distributor when it has purchased similar products from different manufacturers and it is alleged that the products have caused the injury? If any of the manufacturers refuse to provide the distributor a defense concerning its product, and if no manufacturer provides an overall defense to the distributor, the distributor must present its own defense, which will necessarily include a defense of the product manufactured by the recalcitrant manufacturer. The distributor is likewise in a poor position to attempt to defend the product manufactured by another. This statute, while not a model of draftsmanship, appears to resolve this dispute by requiring the "man-ufacturer" of a defective product alleged to have caused the injury to indemnify and hold harmless the distributor. Ansell and BD are such manufacturers. The Legislature has elected to favor the innocent distributor over the manufacturers of allegedly defective products. The Texas Supreme Court has analyzed the statute in a light favorable to the innocent seller. Here, such an application results in requiring each manufacturer of an allegedly defective product sold by an innocent distributor to assume a full defense of the distributor or indemnify it from losses incurred.[3]

 The manufacturer placed in the position of being required to indemnify or defend a seller based on allegations of a products liability action which includes products sold by another party is not without remedy. For instance, in this case the manufacturers, belatedly, attempted to implead the other manufacturers as third parties to recover a right of contribution against the other manufacturers. In the event that a manufacturer is required to indemnify the seller for more than the damages for which it is responsible, the manufacturer would have the right of contribution against other responsible manufacturers. A suit for contribution may be brought and considered timely even if the original plaintiff's lawsuit against the contributing defendant would be barred by limitations. *In re Martin*, 147 S.W.3d 453, 458 (Tex.App.-Beaumont 2004, pet. denied). The right to recover contribution accrues when one is subjected to a judgment or pays sums in settlement. *Conroe*

---

**3.** *See also Dutton–Lainson Co. v. Do It Best Corp.*, 180 S.W.3d 234, 238 n. 1 (Tex.App.-San Antonio 2005, no pet.) ("Although the statute may appear to be facially unfair to innocent manufacturers named in a lawsuit, it was within the Legislature's province to weigh the conflicting policy implications of the statutory indemnity in determining whether losses arising out of a products liability action should be borne by the innocent seller or the innocent manufacturer. The Legislature chose to give 'preference to sellers with no independent liability.' ") (quoting *Fitzgerald*, 996 S.W.2d at 867) (citing *Meritor Automotive*, 44 S.W.3d at 91 and *Burden v. Johnson & Johnson Med., Inc.* 332 F.Supp.2d 1023, 1028–29 (S.D.Tex.2004)).

*Truck & Tractor, Inc. v. Childs Truck Equip., Inc.,* 723 S.W.2d 207, 208–09 (Tex. App.-Beaumont 1986, writ ref'd n.r.e.).

We conclude Ansell and BD had the duty to indemnify or defend O & M even though O & M distributed products of other manufacturers.

## 2. Did Ansell and/or BD Tender an Adequate Defense to O & M?

■ Having found that Ansell and BD were indeed obligated to indemnify O & M for its defense costs, we must decide whether the manufacturers met their statutory obligations and agreed to provide a defense to O & M, thereby obviating the need for O & M to incur litigation costs.

Ansell and BD argue that they have complied with their obligation to indemnify O & M in the McCabe case by tendering a defense of the product each manufactured. O & M rejected the purported offers because the offers did not include a defense of the entire products liability action. Ansell and BD argue that to require them to defend the entire case would place them in a position of defending a product manufactured by another company. They further argue that such a requirement would be absurd and that a more reasonable construction of the statute would require the seller-distributor to require each manufacturer to defend its own product. If that occurred, the seller would be fully protected and there would be no gap in the product defense. Consequently, the offer to defend the product manufactured by the respective manufacturer fulfilled their indemnity requirement and no costs or attorney's fees were necessary by O & M.

When O & M was served with McCabe's products liability lawsuit, O & M notified both Ansell and BD and asked both manufacturers to defend the distributor.[4] An-

sell responded with a letter saying it would defend any claim relating to Ansell's products, "provided we can agree upon an appropriate method whereby Ansell Healthcare Products, Inc. only defends its natural rubber latex gloves in this litigation." The letter states that a group of manufacturers was attempting to agree on a procedure as to how they should respond to such requests. The letter further explained that it would be prudent to wait until such an agreement had been proposed as to how such tenders of defense should be addressed or, if no global agreement could be reached, then individual discussions would occur as to whether Ansell may defend its product with respect to claims being made against O & M for selling Ansell's gloves. Finally, the letter proposed deferring any further discussions until the manufacturers and distributors could attempt a resolution regarding the distributors' tenders of defense. Ansell claims it never received a response to this letter.

BD also alleges that it tendered a defense to O & M and should not be obligated for the attorney's fees O & M incurred. This defense emanates from letters and discussions that occurred over time, from around 1995, when all relative parties began this mass product litigation. In a case involving the same parties and the same alleged products liability in Pennsylvania, BD responded to O & M's demand for defense by conditionally agreeing to defend and indemnify O & M. This conditional defense was extended to O & M in latex glove cases to the extent that:

1. The plaintiff alleged exposure to BD latex gloves;

2. O & M was named as a party because it was alleged to have sold BD

---

4. Most of the original defendant manufacturers and O & M have been involved in mass tort litigation concerning latex gloves in courts across the United States since at least 1995.

gloves to the plaintiff's employers during the relevant time period; and

3. O & M produced documentation to establish that it sold BD gloves to the pertinent party.

BD agreed to defend O & M to the extent that BD gloves were found to have caused the plaintiff harm. This defense and indemnity would not extend to gloves manufactured by other defendants.

Ansell and BD both moved for summary judgment in the trial court on the ground they had offered to defend O & M and, therefore, discharged their duty under Section 82.002. These motions were denied. Both appellants also maintain that they vigorously defended their respective products, which amounted to a defense of O & M.

In support of this argument, Ansell and BD cite *Burden*, 332 F.Supp.2d 1023, 1029 (S.D.Tex. 2004). That case involved many of the same manufacturers and O & M, and also stemmed from products liability litigation regarding latex gloves. In circumstances closely paralleling those presented here, the Federal District Court found that offers by BD and Ansell to defend O & M to the extent O & M was found to have sold BD or Ansell gloves amounted to an offer to defend O & M.

The *Burden* court found:

A fair reading of the letters shows that the manufacturers were willing to defend Owens until it was proven that Burden did not use their gloves. Their offers met their obligations under the law. In addition, their own defense is an implicit defense of Owens. Its fees and costs were unnecessary because the manufacturers' offers of defense were adequate. The manufacturers do not have to indemnify Owens.

*Id.* After analyzing the *Meritor* case, a precedent to which we are bound, it leads us to respectfully disagree with the holding in *Burden*. In *Meritor*, the manufacturers argued that they had no indemnity duty to the distributor because the plaintiffs alleged the distributor was negligent. As we have previously discussed, the Texas Supreme Court did not agree with that argument, but instead adopted the argument of the distributor that, so long as the negligence claim against the distributor was a part of a products liability action, the manufacturer had the duty to indemnify the distributor. Since the statute requires a manufacturer to indemnify the distributor for damages incurred as the result of a "products liability action," the Texas Supreme Court analyzed the statute to determine the legislative intent of the meaning of "products liability action." *Meritor*, 44 S.W.3d at 90. The Texas Supreme Court concluded that the phrase "products liability action" includes all direct allegations against the seller that relate to a plaintiff's injury and excludes only those losses caused by the seller. *Id.* The court further stated that, whether the manufacturer's position is fair or not, it is simply not what the statute provides. In essence, the Texas Supreme Court accepted the argument of the distributor that a "products liability action" includes all claims properly joined as a part of the product lawsuit. *Id.* at 89–90. Employing the same analysis as the Texas Supreme Court in *Meritor*, we find that the "products liability action" in this case included the claim that multiple manufacturers of latex gloves were responsible for McCabe's injuries.

It is clear that both Ansell and BD offered to defend their own product. However, neither offered to defend the "products liability action" filed against O & M, which included a defense of the entire proceeding. As we have found that Ansell and BD had the duty to indemnify O & M for the products liability action against O & M and that they never offered to defend

the entirety of the products liability action, we hold their limited offers to defend only their own products did not fulfill their indemnity duty under the statute.

The trial court found that Ansell and BD "at best offered only a partial defense." The trial court based this finding on the "plain language" of Section 82.002 and the holdings in *Meritor* and *Freeman Fin. Inv. Co. v. Toyota Motor Corp.*, 109 S.W.3d 29 (Tex.App.-Dallas 2003, pet. denied). We find the weight of binding authority supports the trial court's decisions, and overrule this point.

### 3. Are Ansell and BD Jointly and Severally Liable for O & M's Costs to Defend Suit?

 Ansell and BD argue that the trial court erred in finding them independently liable for O & M's entire damages, thereby assigning joint and several liability to the two defendant manufacturers. Ansell and BD point out that joint and several liability was recognized in *Landers v. E. Tex. Salt Water Disposal Co.*, 151 Tex. 251, 248 S.W.2d 731 (1952), where the tortious acts of two or more wrongdoers were found to have joined and produced one indivisible injury. *Id.* at 734. They argue that, since there was no finding of wrongdoing in this case, such analysis does not apply. The manufacturers further reason that joint and several liability is inappropriate because there is no mechanism to apportion any damage award among the manufacturers as would be the case if the provisions of Chapter 33 of the Texas Civil Practice and Remedies Code applied. That chapter specifically states that nothing in Chapter 33 "shall be construed to affect any rights of indemnity granted by any statute, by contract, or by common law." Tex. Civ. Prac. & Rem.Code Ann. § 33.017 (Vernon

Supp.2005). Likewise, Chapter 82 of the Texas Civil Practice and Remedies Code has no provision for allocating the indemnity damages among multiple manufacturers. Ansell and BD conclude that the Legislature never contemplated that one manufacturer would be held responsible for all costs and fees incurred by a distributor when multiple manufacturers are involved. It is argued that the proper allocation of these damages would be a pro rata distribution of the damages among all manufacturers named in the McCabe petition.

The manufacturers' argument has some logic and appeal. It is true that no party has been found to have caused the underlying damages to McCabe which prompted this action.[5] The damages to O & M occurred in defending the McCabe lawsuit and are only recoverable by statutory authorization, as such recovery would not be authorized in common law. Common law indemnity was authorized when the wrongful conduct of one party subjected another party to liability and recovery could only be for expenditures made to discharge the liability. *See Humana Hosp. Corp. v. Am. Med. Sys., Inc.*, 785 S.W.2d 144, 145 (Tex. 1990). However, the Legislature's Act granted to seller-distributors remedies that were not previously available: i.e.—it applies regardless of the outcome of the underlying case; it includes recovery of attorney's fees and costs; and no showing of the manufacturer's liability to the underlying plaintiff is required. Ansell and BD argue that O & M would be completely reimbursed by seeking its damages from each manufacturer and requiring each to reimburse O & M for its pro rata share of the costs incurred.

Joint and several liability has been imposed when the negligence of two or more

---

**5.** If McCabe was injured by the latex gloves, such an injury would be a classic indivisible injury for which manufacturers have traditionally been held jointly and severally liable. *See Borel v. Fibreboard Paper Prods. Corp.*, 493 F.2d 1076, 1094–96 (5th Cir.1974).

persons join in producing a single indivisible injury even though there is no concert of activity or common duty. *See Baylor Univ. v. Bradshaw,* 52 S.W.2d 1094, 1100 (Tex.Civ.App.-Austin 1932), *aff'd,* 126 Tex. 99, 84 S.W.2d 703 (1935). In *Landers,* the Texas Supreme Court found that a major factor for requiring joint and several liability was the onerous burden of proving the share each party contributed to the injury. *See Landers,* 248 S.W.2d at 735. Here, O & M has suffered an indivisible injury as a result of selling allegedly defective latex gloves made by several companies. The injury caused O & M to incur costs in defending the litigation and in pursuing a statutory indemnity right. The statute contemplates that the distributor would be reimbursed for its costs. Requiring the distributor to attempt to recover its costs from the many different manufacturers would place on the distributor the burden of attempting to bring each such manufacturer into the litigation, the risk of the insolvency, lack of jurisdiction, or other difficulties in enforcing its statutory right.

Which of the parties should bear the burden to implead all manufacturers and take the risk that some may not be subject to jurisdiction or worse, might be in bankruptcy? The statute does not specifically provide the answer. We believe the language of the statute indicates that the Legislature chose to favor the seller in the enforcement of these rights. The statute is worded broadly, requiring manufacturers to pay all damages incurred by the seller. The distribution of these damages among all relevant manufacturers may be accomplished by contribution claims filed by the manufacturers.

██ We acknowledge that there is no direct authority that manufacturers are jointly and severally liable for indemnity to the seller, but we believe the law supports this conclusion based on our consideration of a number of sources. As we have previously noted, joint and several liability generally arises when the injury cannot be attributed with reasonable certainty to individual entities. *Id.* at 734. For joint and several liability to attach, it is not required that the damages are to compensate for personal injury or pollution. *See Marcus, Stowell & Beye Gov't Secs. v. Jefferson Inv. Corp.,* 797 F.2d 227, 233 (5th Cir.1986) ("MSB suffered only a single injury—the loss of a commission to be earned by locating a purchaser for Jefferson's mortgage portfolio."); *Am. Motorists Ins. Co. v. Briggs,* 514 S.W.2d 233, 236 (Tex.1974) ("If coverage exists under two or more policies, liability on the policies is joint and several. . . ."). Ansell and BD argue that joint and several liability only attaches in tort cases where a party is found to be a wrongdoer, and since this case involves liability only for a statutory cause of action, joint and several liability is inapplicable. The San Antonio court has faced an analogous situation. In *Garcia v. Am. Physicians Ins. Exch.,* a physician sued his insurance companies for failing to defend him in a medical malpractice case. 812 S.W.2d 25 (Tex.App.-San Antonio 1991), *rev'd on other grounds,* 876 S.W.2d 842 (Tex.1994). The San Antonio court held that the case was a "statutory cause of action based on APIE's failure to defend, negotiate and settle, and the jury's findings that that failure constituted violations of article 21.21. The failure to defend, negotiate and settle by Dr. Garcia's insurance companies constituted an indivisible injury to him that cannot be apportioned on a pro rata basis. APIE's liability is joint and several." *Id.* at 31–32. Likewise, here, the cause of action is a statutory one for failure to defend or indemnify O & M, and it constitutes a violation of Section 82.002 of the Texas Civil Practice and Remedies Code. As in *Garcia,* the failure by the manufacturers to defend or indemnify O & M constituted an

indivisible injury that cannot be apportioned on a pro rata basis any more than the loss in *Garcia* could be apportioned to the insurance companies involved. We recognize that the Texas Supreme Court found that one insurance company did not fail to defend Garcia, but the Texas Supreme Court's holding did not undermine or address the reasoning of the San Antonio court of appeals that a statutory cause of action for the failure to defend another when one had a duty to do so results in joint and several liability for the offenders. After reviewing the statute, the Texas Supreme Court's application and analyses of it, and the other authorities cited above, we find the trial court did not err in assigning joint and several liability to the defendant manufacturers.

## 4. Were O & M's Attorney's Fees Reasonable and Necessary?

The trial court awarded a total recovery of $73,911.42 for services before June 13, 2002 (the date of O & M's dismissal with prejudice from the products liability suit), and $310,627.90 for those afterward. This totaled $384,539.32, but the court deducted $32,811.00 for a settlement, leaving $351,728.32 for the attorney's fees, paralegal fees, and expenses. The trial court also awarded $65,000.00 for appellate fees.

The attorney's fee award in this case is, to say the least, a large one. Assuming

the reasonableness of $73,911.42 in attorney's fees for the underlying products liability suit,[6] could O & M then incur another $310,627.90 in attorney's fees simply to collect the initial $73,911.42, especially where Section 82.002 virtually assured O & M of some right to indemnity in this action?

This instant suit, involving O & M's right to indemnification pursuant to Section 82.002, was tried before the trial court. On April 27, 2004, O & M presented testimony from Tidwell, who had reviewed the attorney billing records of O & M. Tidwell testified that O & M's fees were reasonable and necessary. According to Tidwell, even if O & M was an innocent seller, and could count on indemnification pursuant to Section 82.002, the same amount of time and effort would go into monitoring O & M's defense, that is, monitoring what the manufacturers were doing to defend McCabe's suit. Because McCabe's allegations included negligence, and these allegations were directed at O & M as well as the manufacturers, there was a possibility, according to Tidwell, all or most of the manufacturers could go bankrupt, and either this or the chance of being found negligent exposed O & M to liability.

Josephson, who testified for Ansell and BD as their expert on attorney's fees, stated that he did not analyze O & M's fees according to the *Arthur Andersen*[7] ele-

---

**6.** Richard Josephson, expert for Ansell and BD, testified that, in his opinion, a reasonable attorney's fee for what O & M's attorneys had to do to defend O & M in the underlying suit would have been around $10,000.00 and $15,000.00, and if O & M's attorneys "expended twenty to thirty thousand dollars, then I wouldn't be quibbling about that." Nonetheless, based on the trial court's explicit findings and conclusions on this point, and attorney Kelly Tidwell's ample testimony analyzing same, we find the evidence sufficient to support the finding of attorney's fees for that underlying suit.

**7.** *Arthur Andersen & Co. v. Perry Equip. Co.,* 945 S.W.2d 812 (Tex.1997). The Texas Supreme Court held the following factors should be considered when determining the reasonableness of an attorney's fee:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;

(2) the likelihood ... that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

ments. Josephson explained that he did not find O & M's attorney's fees of $73,911.42 for the initial products liability suit to be reasonable and necessary. Josephson also opined that, based on Section 82.002's indemnification provision, O & M almost certainly faced no prospect of liability in the underlying products liability suit. To support that assertion, Josephson referenced, and the manufacturers introduced into evidence, an article by one of O & M's attorneys from a legal publication describing various states' indemnification statutes and strategies for distributors. Josephson pointed out that, for the initial products liability suit, O & M's national counsel had billed around $30,000.00, compared with the $73,880.00 billed by the local firm. In Josephson's opinion, counsel for O & M had only to answer McCabe's petition, reply to any discovery, and attend depositions of its clients.

BD was dismissed, without prejudice, from the underlying products liability suit in December 2001; O & M was dismissed, with prejudice, in June 2002. In the indemnity action, over a period of time, the parties all filed a substantial amount of requests for production, notices of depositions, and motions for summary judgment, which were then opposed with requisite briefs in support of the various positions. The clerk's record in this case, spanning filings from August 2002 through trial in the spring of 2004, comprises nine volumes. There were five pretrial hearings, which generally involved discussion and argument about discoverable materials, especially maintaining the confidentiality of each parties' attorney billing records.

Additionally, several depositions were taken, including some of the partners in the law firm representing BD. There is also reference to depositions being taken of one or both of the attorneys representing O & M, one of whom officed in Virginia. While it certainly appears to this Court that Section 82.002 provided a clear right to O & M for indemnification, we also acknowledge there were some legitimate questions about the extent of that right in the current situation. For example, it can be argued that none of the Texas Supreme Court's cases applying Section 82.002 specifically address multiple manufacturers or the issue of joint and several liability. Likewise, the Texas Supreme Court has not directly addressed exactly what a manufacturer must do to "tender a defense" following a distributor's request. As mentioned, there were five hearings from December 2002 to December 2003, covering depositions of attorneys, the issue of privilege as regarded attorney billing statements, and general scheduling problems among the many lawyers representing the several defendants.

### a. Legal Sufficiency

 Section 82.002(a) states that a "manufacturer *shall* indemnify . . . a seller against loss arising out of a products liability action." Tex. Civ. Prac. & Rem.Code Ann. § 82.002 (emphasis added). A loss includes reasonable attorney's fees. The trial court properly granted an award, as

(4) the amount involved and the results obtained;
(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Id.* at 818.

the statute requires. However, we review an amount awarded for legal and factual sufficiency. *See Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex.1998). Attorney's fees must be based on some statutory or contractual authority. *Holland v. Wal–Mart Stores, Inc.*, 1 S.W.3d 91, 95 (Tex.1999). In determining whether attorney's fees are reasonable, the trial court should consider the factors discussed in *Arthur Andersen & Co.*, 945 S.W.2d at 818. When a party or parties without the burden of proof, here, Ansell and BD, challenge the legal sufficiency of the evidence, an appellate court will consider all the evidence in the light most favorable to the prevailing party, indulging every reasonable inference in that party's favor. *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 285–86 (Tex.1998).

Even if we disagree with the trial court's findings, we cannot reverse if the above standard is met. Looking at the evidence in the light most favorable to O & M, it is clear there was evidence to support the trial court's findings. The trial court had extensive, detailed billing records from O & M's attorneys. As pointed out above, the litigation over indemnification went on for two years, and all parties filed numerous, and in many cases voluminous pleadings, motions, and briefs. Common prudence instructs us that spending in excess of $300,000.00 in attorney's fees to collect $73,911.42 does not make economic sense. However, we must consider the evidence in a light most favorable to O & M. After carefully reviewing the record, we are not persuaded that counsel for O & M specifically overbilled or overworked the case. It appears both sides to this controversy have been litigating this battle on many fronts for a number of years. Each appears willing to spare no expense to see that justice prevails. We find the evidence legally sufficient to support the trial court's ruling on O & M's attorney's fees.

### b. Factual Sufficiency

A court of appeals can set aside the verdict only if it is so contrary to the overwhelming weight of the evidence that the verdict is clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). The court of appeals is not a factfinder. Accordingly, the court of appeals may not pass on the witnesses' credibility or substitute its judgment for that of the jury, even if the evidence would clearly support a different result. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex.1998). If we find the evidence insufficient, we must clearly state why the jury's or, here, the trial court's, finding is factually insufficient or is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986). In so doing, we do not pass on the credibility of the witnesses, and we do not substitute our opinion for that of the trier of fact, even if there is conflicting evidence on which a different conclusion could be supported. *Clancy v. Zale Corp.*, 705 S.W.2d 820, 826 (Tex.App.-Dallas 1986, writ ref'd n.r.e.).

Once again, whether we agree with the trial court's finding is irrelevant. We cannot say that evidence supporting O & M's claimed attorney's fees is so against the great weight and preponderance of evidence as to be manifestly unjust. Although we may have come to a conclusion different from that of the trial court, such is not within our power here. Having conducted our own review of the attorney's billing records, as well as the ample filings by all parties over two years of litigation, we must conclude that the trial court's conclusions and findings regarding attorney's fees are supported by factually sufficient evidence, and therefore overrule this point of error.

## c. Attorney's Fees for Appeal

 However, we do take issue with the $65,000.00 approved by the trial court for attorney's fees on appeal. This amount included: $25,000.00 from notice of appeal through briefing; $7,500.00 to prepare and present oral argument to this Court of Appeals; $15,000.00 to prepare a petition for review to the Texas Supreme Court; $10,000.00 to brief the case for the Texas Supreme Court; and $7,500.00 to prepare and present oral argument before the Texas Supreme Court. The only testimony supporting these figures comes from Tidwell, who testified that he estimated eighty hours would be necessary for "initial briefing post-trial," and that such would be billed at $300.00 per hour. Even though O & M introduced an exhibit indicating attorney's fees of $65,000.00 for the appeal, Tidwell did not specifically testify that $65,000.00 was a reasonable and necessary fee on appeal. He merely agreed with counsel that the exhibit was an "analysis taken through the Supreme Court" and the basis for it was "basically what you just told us." There is substantial evidence, acknowledged by Tidwell, that O & M's attorneys never charged more than $190.00 per hour. (Tidwell did testify that rates for such complex litigation were usually in the range of $300.00 to $500.00, depending on whether the particular attorney was a partner or associate; and O & M introduced one of its responses to the requests for disclosure containing Tidwell's estimate that O & M's "fees and expenses are more reasonably calculated" at rates of $300.00 and $275.00 per hour for their senior attorneys.) One of O & M's attorneys provided an affidavit opining an appeal would incur $10,000.00 in attorney's fees to the intermediate court, then another $7,500.00 to the Texas Supreme Court. Josephson also pointed out that O & M's attorneys did not bill more than $200.00 per hour.

The trial court's finding on reasonable and necessary attorney's fees for appeal of this case is so contrary to the overwhelming weight of the evidence that the verdict is clearly wrong and unjust. *Cain,* 709 S.W.2d at 176. Tidwell's testimony will support a maximum recovery through the Court of Appeals of $24,000.00. The only competent evidence supporting attorney's fees for appeal to the Texas Supreme Court is that O & M's attorneys admitted by affidavit that $7,500.00 was a reasonable fee for an appeal to the Texas Supreme Court. We find the only evidence to support an award for attorney's fees on appeal is $24,000.00 for an appeal to the Court of Appeals and an additional $7,500.00 for an appeal to the Texas Supreme Court. Therefore, the trial court's judgment for appellate fees is contrary to the evidence and was clearly wrong.

## 5. Did Trial Court Abuse Discretion in Overruling Ansell's Motion to Join Other Manufacturers?

 As we have said, this case was heard by the trial court April 27 and May 19, 2004, in addition to several pretrial hearings which occurred from December 2002 to December 2003. Ansell filed a motion to join other manufacturers as third-party defendants in the indemnification suit February 23, 2004. The trial court denied Ansell's motion March 20, 2004. The trial court cited as grounds that the motion was untimely.

Before a case is called for trial, additional parties, necessary or proper parties to the suit, may be brought in, either by the plaintiff or defendant, on such terms as the trial court may prescribe, but neither at a time, nor in a manner which would unreasonably delay the trial of the case. TEX.R. CIV. P. 37; *Akinwamide v. Transp. Ins. Co.,* 147 S.W.3d 623, 625 (Tex.App.-Corpus Christi 2004, no pet.) (motion to join other

parties filed seventeen days before trial overruled; held not abuse of trial court's discretion). There is nothing in the record to indicate that the identities of the other manufacturers were unknown to Ansell. The record further does not indicate that the issue of those manufacturers' potential liability was unknown to Ansell. *See Jones v. Smith,* 157 S.W.3d 517, 523 (Tex. App.-Texarkana 2005, pet. denied) (motion filed one day before trial, and information necessary to pursue the motion had been known since filing of suit, one year earlier). Based on the length of litigation before this matter went to trial, and the fact that the issue of potential contribution from other manufacturers was or should have been evident to Ansell, we cannot say the trial court abused its discretion in finding the motion untimely.

### 6. Conclusion

We believe that Ansell and BD had a duty to indemnify O & M under the statute. We find the attempted limited defense was insufficient to fulfill the indemnity requirements under the statute. There is legally and factually sufficient evidence to support the findings of the trial court concerning the attorney's fees assessed jointly and severally against the manufacturers. We find the evidence factually insufficient regarding appellate attorney's fees. We affirm the judgment, conditioned on a remittitur of $33,500.00 of the $65,000.00 appellate attorney's fee award. In all other respects, the judgment is affirmed. In the event the remittitur is not filed with this Court within twenty (20) days from the date of this opinion, we remand the case to the trial court for a new trial. *See* TEX.R.APP. P. 46.3.