**Kathy BURDEN, et al., Plaintiffs,**

v.

**JOHNSON & JOHNSON MEDICAL, INC., et al., Defendants.**

**No. CIV.A. H–00–1505.**

United States District Court,
S.D. Texas.

Aug. 4, 2004.

Frederick M. Baron, Baron & Budd, Dallas, TX, for Plaintiffs.

Gregory S. Meece, Thompson & Knight LLP, Frank G. Jones, Fulbright & Jaworski, Darrell M. Grams, Brown McCarroll et al., Ann Pate Watson, Sheehy Serpe and Ware, Gene Francis Creely, II, McGlinchey Stafford, Margaret T. Brenner, Bracewell & Patterson LLP, John Paul Venzke, The Venzke Law Firm, Brian P. Johnson, Johnson Spalding et al., Charles Wayne Lyman, Giessel Barker & Lyman,

Houston, TX, William C. Dowdy, III, Strasburger & Price, Hubert A. Crouch, III, Crouch & Ramey LLP, William D. Cobb, Cowles & Thompson, Michael R. Berry, Thompson & Knight, Dallas, TX, John Dames, Kelly Drye et al., Richard Michael Duffy, Gardner Carton & Douglas, Jeffrey Singer, Robert O. Malley, Segal McCambridge et al., Chicago, IL, Ernest Reynolds, III, Reynolds & Pennington, Fort Worth, TX, Karen Shichman Crawford, Buchanan Ingersoll, Pittsburgh, PA, Anthony G. Brazil, Morris Polich & Purdy, Los Angeles, CA, Gene M. Williams, Mehaffey & Weber, Michael Ray Walzel, Stevens Baldo & Freeman, Beaumont, TX, Roger G. Perkins, Neil Dymott et al., San Diego, CA, Clay M. White, Sammons & Parker, Tyler, TX, Barry Epstein, Andrew Schwartz, Sills Cummis Epstein & Gross, P.C., Newark, NJ, Fred A. Kelly, Jr., Nixon Peabody, Boston, MA, Robert F. Redmond, Jr., Williams Mullen, Richmond, VA, Henry H. Janssen, Hoyle Morris & Kerr, Robert P. Corbin, German Gallagher et al., Ellen Rosen Rogoff, Stradley Ronon et al., Philadelphia, PA, Deborah Jean Bullion, McGlinchey Stafford, Sugar Land, TX, Donald R. Peterson, Peterson Johnson & Murray, Allen C. Schlinsog, Jr., Beth Ermalinger Hanan, Reinhart Boerner et al., Milwaukee, WI, for Defendants.

Opinion on Indemnity

HUGHES, District Judge.

## 1. *Introduction.*

A dental assistant claimed that the latex gloves she wore caused an allergic reaction. She sued several producers and distributers of the gloves, eventually settling. A distributor seeks indemnification for its defense costs from some of the producers.

## 2. *Background.*

In February 2000, Kathy Burden sued 38 businesses claiming that she suffers skin problems from an allergic reaction to latex gloves she wore as a dental hygienist. Some of the companies manufactured latex gloves; others sold them. Burden pleaded a product liability action that included strict liability, negligence, and fraud claims. *See* Tex. Civ. Prac. & Rem.Code § 82.001(2).

After the companies removed the case, it was transferred to Pennsylvania as part of a multi-district litigation operation. For almost three years, the parties discovered information that lead to the dismissal of several defendants. The case then was transferred back to this court. Two months later, Burden dismissed her case because she had dismissed or settled with every defendant.

Owens & Minor, Inc., and Owens & Minor Medical, Inc.—sellers of latex gloves— sued for indemnity against four manufacturers. Owens settled with two of them, leaving Becton Dickinson & Company and Ansell Healthcare Products, Inc., as manufacturers.

## 3. *Indemnity.*

Owens argues that Texas law requires the manufacturers to pay for the costs and attorneys' fees of its defense of Burden's claims and for enforcing its right to indemnity. *See* Tex. Civ. Prac. & Rem.Code § 82.002. The manufacturers claim that they should not have to indemnify Owens because:

(a) The statute does not apply when a distributor sues multiple manufacturers;

(b) The statute does not allow for joint and several liability between manufacturers;

(c) Defending themselves against Burden adequately defended Owens; and

(d) Owens declined their offers to defend.

If they must pay, they say that they should be liable only for the proportion of their gloves that Owens sold in Texas during Burden's exposure.

4. *Legislation.*

In 1993, the Texas legislature simplified the liability of manufacturers and sellers in product cases. The statute has the manufacturers indemnify sellers unless the seller directly caused the injury. Indemnification includes damages, attorneys' fees, and costs of the action. It also includes the seller's fees and costs in enforcing its statutory right. The manufacturer is liable to a seller no matter how the injury action is resolved, and the statute supplements the seller's rights under common law or contract. *See* Tex. Civ. Prac. & Rem.Code § 82.002(e)(2).

 A manufacturer's duty to indemnify begins as soon as it is notified that a seller has been sued. *See* Tex. Civ. Prac. & Rem.Code § 82.002(f). It is liable to a seller even if the plaintiff has not shown that he bought the product from the seller. *See Fitzgerald v. Advanced Spine Fixation Systems, Inc.,* 996 S.W.2d 864, 867–69 (Tex.1999). A manufacturer must also reimburse a seller for its defense of a separate negligence claim unless the seller has been shown to have been at fault. *See Meritor Automotive, Inc. v. Ruan Leasing Co.,* 44 S.W.3d 86, 90–91 (Tex.2001).

The statute serves several purposes. It protects sellers from lawsuits over aspects of products that they do not control, like design or production. A uniform system also allows manufacturers and sellers—and their insurers—to make informed business judgments because they can better predict potential exposure. *See Fitzgerald,* 996 S.W.2d at 868–69. This reduces the need for manufacturers and sellers to carry insurance coverage for the same event; this helps the consumers because all of the costs are passed along to them in the sales price. It also reduces the wasteful transaction costs of the plaintiff suing the entire chain of distribution for a manufacturing defect; transaction costs, like insurance costs, are included in the sales price to the consumer.

It helps plaintiffs because, if their counsel read the statute, they know to sue only the manufacturer, unless (a) they have evidence of a seller's error or (b) they cannot determine who made the item. Further, by redirecting costs and focusing responsibility, manufacturers are more likely to have insurance at an affordable rate than under the earlier system.

5. *Multiple Manufacturers.*

 The manufacturers argue that, if the statute applies when the seller claims indemnity from more than one manufacturer, it violates their rights. *See* U.S. Const. amend. XIV. § 1; Tex. Const. art. 1, § 19. First, they say that making several manufacturers indemnify a seller based merely on a plaintiff's unsupported allegation is an unconstitutional taking of their assets. The government of Texas has not appropriated manufacturers' property to its own use; that would implicate the constitutional ban on uncompensated takings by government. Texas has adopted a statutory scheme partially to regulate the law of liability for a defective product. That brings us to the second claim.

 Next, they also contend that the statute is unconstitutionally arbitrary because no legitimate societal interest is served when a seller gets to collect from several manufacturers, especially when the seller is a thriving corporation. A governmental act does not violate the constitution, if, by its terms or impact, the act has an objective that relates rationally to a governmental power, which is entrusted to that government.

The act employs a permissible means. The actual accomplishment of the objective and significance of the objective justify the nature and extent of the resulting inhibition of a component of liberty. The act has been adopted and applied with procedural regularity, and the act distinguishes between affected and non-affected persons defensibly because the criterion between them is logically connected to the objective. These criteria were met on the actual facts rather than by legislative recitations.

The statute has several objectives that are accomplished in the real world of making, selling, and defending useful products in Texas. Because sellers are not liable for manufacturing defects, the legislature sought to protect non-negligent sellers from the costs of lawsuits about product defects. *See* Debate on Tex. S.B. 4 on the Floor of the Senate, 73d Leg., R.S. 2, at 2 (Jan. 28, 1993) (statement of Sen. Parker). It also has the benefit of simplifying product liability litigation.

Those are realistic goals, and on this record at least, they have been partially accomplished. Costs reduced in defending and insuring against lawsuits benefit the consumers as a whole. A rational system of product litigation increases the likelihood that companies will do business in Texas, benefitting consumers and the government. The manufacturers here say that some manufacturers will not do business in Texas because of this burden; if that turns out to be true, Texas will have to re-evaluate the law and all of its consequences. Even if it were counter-productive, that does not make it unconstitutional; it is just bad policy.

The statute is analogous to a worker-compensation scheme, limits on damages, statutes of repose and limitation, and licensing systems. *See Duke Power Co. v. Carolina Env. Study Group*, 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978).

While the statute is rationally related to these interests, there is no question that the relation is at least debatable. *See FM Prop. Operating Co. v. City of Austin*, 93 F.3d 167, 174 (5th Cir.1996).

In addition, the manufacturers' concerns are dismissed by the plain meaning of the statute. It carefully and categorically places the duty to indemnify on the manufacturers regardless of how the action is concluded. The obvious intention of the language is that manufacturers must pay even if the litigation is concluded without a determination of liability.

Further, the statute does not differentiate between rich and poor sellers. It only distinguishes between innocent and guilty ones. The manufacturers may not think that the statute is fair, but that does not mean it is unconstitutional.

The distinction between makers and sellers is sensible. It reflects the actual types of companies operating practices. It is not irrational or punitive; it is not even populist.

### 6. *Statutory Text.*

■ The manufacturers also argue that the statute does not apply to multiple manufacturers because, in the statute, the term "manufacturer" is singular rather than plural. This contradicts statutory interpretation; in Texas, singular words in a statute include the plural and the plural include the singular. *See* Tex. Govt.Code § 311.012(b). Without the interpretive aid, a seller may seek indemnity from several manufacturers because the law applies to each of them. Lumping them into one lawsuit does not change the character of their individual responsibilities.

The statute sets indemnity rights in product actions to protect sellers. In fact, it adds to the producers' duty to indemnify. *See* Tex. Civ. Prac. & Rem.Code

§ 82.002(e)(2). Allowing a seller to recover from multiple manufacturers fits the indemnity scheme. It reduces transaction costs by making one type of party—the manufacturers—defend their products and distribution. Owens may sue Becton and Ansell for its fees and costs.

### 7. *Chain of Distribution.*

■ There is no dispute that Owens & Minor is a "seller," and Ansell and Becton are "manufacturers" under the statute. *See* Tex. Civ. Prac. & Rem.Code § 82.001(3), (4). Further, the parties agree that Owens has distributed the two manufacturers' gloves for years. No one knows what type of glove caused Burden's skin problems or who supplied gloves to her employer. Those issues were not fully developed before she settled.

Burden simply sued everyone of conceivably could have been responsible with no factual basis for including most of the folks. She also gratuitously sued the sellers when a reasonable investigation and a little thought would have shown that the problem had nothing to do with the sellers, who passed along sealed packages from the factory. In sum, the actual chain of distribution from the manufacturers through Owens to Burden is unknown.

Owens contends that finding a direct connection among the plaintiff, a manufacturer, and it is unnecessary. It argues that once it establishes that it is a faultless seller and the defendants are manufacturers, it gets reimbursed. *See Owens & Minor v. Ansell Healthcare Products, Inc., et al.,* No. 00C0099A–102 (102nd Dist. Ct., Bowie County, Tex. Feb. 13, 2003); *Talley v. Johnson & Johnson Medical, Inc.,* No.2000–03832 (125th Dist. Ct., Harris County, Tex. June 4, 2003).

Consider this hypothetical: A consumer sues seven drug stores knowing he bought from four or fewer and not knowing which of the defendants supplied him. He took a prescription drug manufactured by two companies, and the claim is product defect. In this case, the statute works to oblige the makers to defend and to pay the sellers' modest costs, with the modesty of the costs depending on cooperation among the parties and judicial management. The gross costs will be much less if the makers step in the action promptly since no liability could independently attach to the sellers. They were probably joined fraudulently to defeat diversity in the first place.

The law requires that manufacturers pay regardless of how an action is concluded; that includes actions that are resolved before discovery can show a chain of distribution. *See* Tex. Civ. Prac. & Rem.Code § 82.002(e)(1). With anything short of finding the seller independently liable, the manufacturers must pay. Simple, clear, and probably effective.

Making Owens prove that the manufacturers were in the chain of distribution would force the parties to litigate issues that are unnecessary under the statute. Burden dismissed them before a finding of a distribution chain or fault; having the parties litigate those issues for indemnity purposes is wasteful and brings instability to a uniform indemnity scheme.

### 8. *Defense.*

■ Even if the manufacturers must indemnify Owens, they argue that they should not have to pay its claim here because they offered to defend Owens, but it refused. Owens contends that it rejected the offers because they did not meet the manufacturers' obligations under the law. *See Freeman Fin. Inv. Co. v. Toyota Motor Corp.,* 109 S.W.3d 29 (Tex.App.—Dallas 2003).

In July 1995, Becton offered to defend Owens in an earlier latex glove case. Its offer responded to Owens's tender of its defense to Becton a couple months earlier.

Becton said it would defend and indemnify Owens until it was determined that the plaintiff was not exposed to Becton's gloves. It also said that it would not indemnify Owens for punitive damages or for Owens's negligence. Becton mentioned that Owens may also be insured through a vendor's endorsement although the contract may have different requirements for coverage. Owens did not accept Becton's offer.

Four years later, Becton sent a second letter reasserting its offer to defend and indemnify Owens in that case. Knowing Owens's historical objections to its defense, Becton volunteered to discuss its duties. It argues that these offers apply to this case.

In March 2000, Ansell made a similar offer to defend Owens in this case. It limited its defense to its gloves only; that is, it would not defend Owens once Ansell shows that it was not negligent. It, like Becton, recognized that the defense and indemnity issue was complex and asked Owens to wait to appear in the case until the manufacturers and distributors could come up with a solution.

 The manufacturers' offers to defend Owens were reasonable and fulfilled their duties under the law. A manufacturer's statutory responsibility to sellers begins when it is notified that the seller is a defendant in an action for liability for the manufacturer's product. The duty exists even if it is proven later that the plaintiff did not get the product from the seller. *See Fitzgerald,* 996 S.W.2d at 869. The manufacturer must defend the seller until it—or the seller—is no longer in the case, either by dismissal, nonsuit, settlement, or adjudication.

A fair reading of the letters shows that the manufacturers were willing to defend Owens until it was proven that Burden did not use their gloves. Their offers met their obligations under the law. In addi-tion, their own defense is an implicit defense of Owens. Its fees and costs were unnecessary because the manufacturers' offers of defense were adequate. The manufacturers do not have to indemnify Owens.

In addition, Owens could have accepted the offers without compromising its defense. It could have tendered its defense with a reservation of rights, like the manufacturers' offers to defend. It also could have negotiated a monitoring fee with the manufacturers to ensure that they were properly defending its interests. If the manufacturers' defense was unreasonable or there was a conflict, Owens could have moved to substitute counsel and sought indemnity. Both alternatives are reasonable ways for Owens to avoid duplicating fees.

### 9. *Conclusion.*

The Texas indemnity law is constitutional and allows Owens & Minor to recover its defense costs from Becton and Ansell even if a link between the parties and Burden was not established. Owens's costs were unnecessary because the manufacturers offered to defend it according to their obligations under the law. Because Owens will not recover from the manufacturers, there is no need to determine how Owens's fees and costs should be apportioned.