In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00136-CV
______________________________


ANSELL HEALTHCARE PRODUCTS, INC., AND
BECTON DICKINSON & CO., INC., Appellants
 
V.
 
OWENS & MINOR, INC. AND
OWENS & MINOR MEDICAL, INC., Appellees


                                              

On Appeal from the 102nd Judicial District Court
Bowie County, Texas
Trial Court No. 00-C-0099A-102


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Carter


O P I N I O N

            Texas law allows an innocent seller to be indemnified by a manufacturer when the seller is
sued in a products liability action. Tex. Civ. Prac. & Rem. Code Ann. § 82.002 (Vernon 2005). 
Based on that statute, the trial court granted the seller-distributor, Owens & Minor, Inc., and Owens
& Minor Medical, Inc. (O&M), a judgment against two manufacturers of latex gloves, Ansell
Healthcare Products, Inc., and Becton Dickinson & Company, Inc. (BD). 
Background Facts 
            Janet McCabe found that the latex gloves she had been using in her occupation caused an
allergic reaction. In January 2000, she sued more than ten manufacturers of latex gloves supplied
to her employers as well as the seller-distributor, O&M. That case settled, and all of the defendants
were released by McCabe. However, that was not the end of this lengthy and expensive litigation,
but only the beginning. 
            O&M filed suit against five of the manufacturers, seeking indemnification for its attorney's
fees and litigation costs. Claims against three of these were resolved, leaving O&M's claims against
Ansell and BD. Texas law provides by statute that the manufacturer must indemnify a seller for the
seller's losses, including attorney's fees, arising out of a products liability action. This requirement
is imposed regardless of the manner in which the underlying action was concluded and is in addition
to any other duty of indemnity established by law, contract, or otherwise. Tex. Civ. Prac. & Rem.
Code Ann. § 82.002.
            Apparently, the suit to enforce the attorney's fees was more complicated than the underlying
products liability case, as O&M now alleges it is entitled to collect from the two manufacturers not
only the more than $73,000.00 incurred in the original suit, but an additional $310,000.00 for the
trial of this case and another $65,000.00 for the appeal. After several summary judgment and other
hearings, as well as a bench trial, the trial court found that each of the two manufacturers had an
independent obligation for the damages and awarded all of the above to O&M against the two
manufacturers as indemnity as authorized by Section 82.002. 
Ansell and BD each appeal, raising several issues that can be consolidated as follows:
            1.         Since some of the gloves that caused the problem in the underlying suit were
manufactured by other companies, are Ansell and BD obligated to indemnify O&M? 
            2.         Did Ansell and BD tender an adequate defense to O&M in the underlying suit,
thereby making it unnecessary for O&M to incur attorney's fees? 
            3.         Are Ansell and BD jointly and severally liable for the entire loss incurred by O&M?
            4.         Were the attorney's fees incurred by O&M reasonable and necessary? 
            5.         Did the trial court err in denying Ansell's motion to join other glove manufacturers
as third parties?
Section 82.002 and Manufacturers' Duty to Indemnify
            We begin with a brief discussion of the statute at the center of this litigation. See Tex. Civ.
Prac. & Rem. Code Ann. § 82.002. Section 82.002 requires manufacturers to "indemnify and hold
harmless a seller against loss arising out of a products liability action, except for any loss caused by
the seller's negligence, intentional misconduct, or other act or omission, such as negligently
modifying or altering the product, for which the seller is independently liable." Tex. Civ. Prac. &
Rem. Code Ann. § 82.002(a). This duty to indemnify sellers "applies without regard to the manner
in which the action is concluded" and "is in addition to any duty to indemnify established by law,
contract, or otherwise." Tex. Civ. Prac. & Rem. Code Ann. § 82.002(e)(1), (2). 
            The Texas Supreme Court has addressed Section 82.002, in matters relevant to our discussion
here, in two cases. The first, Fitzgerald v. Advanced Spine Fixation Sys., Inc.,


 involved a seller,
Fitzgerald, who sold a product that was the subject of a products liability suit. Fitzgerald was
dismissed from the suit because, although he had sold the allegedly defective product to others, he
had not actually sold the particular product which led to the plaintiff's injuries. Fitzgerald sued the
manufacturer for indemnification of his litigation costs. The Texas Supreme Court found Section
82.002 entitled Fitzgerald to indemnification from the one manufacturer named in the plaintiff's case,
even though Fitzgerald did not actually sell the instrument which caused injury to the plaintiff in the
underlying suit. The manufacturer argued that the statute did not require it to indemnify a seller who
was not in the chain of distribution from the manufacturer to the plaintiff. In analyzing Section
82.002, the court stated, "[t]he statute does not explicitly require that the seller be proven to have
been in the chain of distribution." Id. at 867. Pointing out Section 82.002(e)(1) ("[t]he duty to
indemnify . . . applies without regard to the manner in which the action is concluded"), the court held
a seller should not "be denied indemnity if it proves that it is innocent but given indemnity if he
settles without admitting or denying the fact." Id. The court carefully examined Section 82.002,
finding that the Legislature clearly meant to create a new duty and "not codify[] existing law," the
statute's duty to indemnify being "in addition to any duty to indemnify established by law, contract,
or otherwise." Id. at 868 (quoting Tex. Civ. Prac. & Rem. Code Ann. § 82.002(e)(2)). The court
concluded that the Legislature's intent in constructing Section 82.002 was to "pass on the costs of
products litigation from an innocent seller to the manufacturer, 'without regard to the manner in
which the action is concluded.'" Fitzgerald, 996 S.W.2d at 868 (quoting Tex. Civ. Prac. & Rem.
Code Ann. § 82.002(e)(1)). "The Legislature sought to protect both manufacturers and sellers, but
gave preference to sellers with no independent liability. Indemnifying sellers such as Fitzgerald, who
did not even sell the product in question, certainly achieves the Legislature's objective of protecting
innocent sellers while still providing a remedy for plaintiffs injured by defective products." 
Fitzgerald, 996 S.W.2d at 869. 
            The Texas Supreme Court also addressed Section 82.002 in Meritor Auto., Inc. v. Ruan
Leasing Co.


 The statute imposing liability on a manufacturer toward a seller has one major
exception—if the seller caused the loss by its own negligence or conduct, the manufacturer is not
obligated to indemnify the seller. The Texas Supreme Court interpreted the exception in the seller's
favor and held that the mere allegation by the plaintiff of the seller's negligence did not relieve the
manufacturer of its indemnity duty to the seller. The manufacturer was relieved of that duty only by
a finding that the seller's independent conduct was a cause of the plaintiff's injury. Id. at 91. 
            With this background, we now proceed to evaluate the points raised by the appellant
manufacturers in this case. 
1.         What is the extent of the manufacturer's duty to indemnify and did these
manufacturers fulfill that duty? 
            Manufacturers must indemnify
            Section 82.002 of the Texas Civil Practice and Remedies Code requires that:
(a)A manufacturer shall indemnify and hold harmless a seller against loss
arising out of a products liability action, except for any loss caused by the seller's
negligence, intentional misconduct, or other act or omission, such as negligently
modifying or altering the product, for which the seller is independently liable.
 
(b)For purposes of this section, "loss" includes court costs and other
reasonable expenses, reasonable attorney fees, and any reasonable damages.

                        . . . .
 
                        (e)       The duty to indemnify under this section:
 
(1)applies without regard to the manner in which the action is
concluded; and 
 
(2)is in addition to any duty to indemnify established by law,
contract, or otherwise.

Tex. Civ. Prac. & Rem. Code Ann. § 82.002(a), (b), (e).

            A "products liability action" is any action against a manufacturer or seller for recovery of
damages arising out of personal injury, death, or property damage allegedly caused by a defective
product whether the action is based in strict tort liability, strict products liability, negligence,
misrepresentation, breach of express or implied warranty, or any other theory or combination of
theories. Tex. Civ. Prac. & Rem. Code Ann. § 82.001(2) (Vernon 2005). Here, there is no
question that the statute requires a manufacturer to indemnify an innocent distributor of a product
when that distributor is sued in a products liability action. The question in this case is: What is the
extent of the duty to indemnify and whether these manufacturers fulfilled that duty?
            No particular product was determined to have actually caused the allergic reaction suffered
by McCabe. Each manufacturer produced and sold latex gloves to O&M, which it in turn sold to
others. McCabe alleged the latex gloves caused her injuries. Since the case was settled, it is
impossible to determine the extent of damage caused by the different products. As a result, O&M
was required to defend the case and incurred attorney's fees. The damages incurred by O&M, like
the damage to McCabe, cannot be traced to particular manufacturers. The statute does not require
that the product be found defective to allow the seller to recover its losses from the manufacturer. 
So, even if it were established that one particular manufacturer's gloves did not cause any damage
to McCabe, that would not relieve that manufacturer of its indemnity obligation to O&M. In arriving
at the determination of the extent of the duty to indemnify, we believe the Meritor case is particularly
pertinent. 
            In Meritor, the plaintiffs in the underlying action alleged not only that the product was
defective, but also that the distributor of the product was negligent. The manufacturer argued that
it had no obligation to defend a seller for the seller's own negligence. This appeared to be a logical
argument, particularly since the statute itself states that a manufacturer is not required to indemnify
a seller for a loss caused by the seller's negligence. This Court had previously observed that a seller
may not recover its costs of litigation from a manufacturer associated with defending allegations of
the seller's own negligence. See Hurst v. Am. Racing Equip., Inc., 981 S.W.2d 458, 463 (Tex.
App.—Texarkana 1998, no pet.). Nonetheless, the Texas Supreme Court rejected that argument
because it found that the statute required the manufacturer to indemnify the seller for a "products
liability action," which is defined to include any action against a manufacturer or seller for damages
caused by a defective product, whether the action is based in strict tort liability, strict products
liability, negligence, misrepresentation, breach of express or implied warranty, or any other theory
or combination of theories. The manufacturers in Meritor also argued that the negligence action
against the seller did not seek damages "allegedly caused by a defective product," i.e., a marketing,
design, or manufacturing defect, and thus it was not part of a products liability action. The Texas
Supreme Court acknowledged that the statute, standing alone, could plausibly support that
construction. But the court ultimately held that the words of the statute "suggest that we are to
include all direct allegations against the seller that relate to plaintiff's injury as part of the 'products
liability action' and that we exclude only those losses 'caused by' the seller." Meritor Auto., 44
S.W.3d at 90.
            Here, the manufacturers insist that they should only be required to indemnify or defend their
particular latex gloves, not the entire case which included latex gloves from other manufacturers,
even though the other manufacturers were joined in the underlying products liability action. Clearly,
the allegations made by the plaintiff in the underlying case were based on a "products liability
action." The statute requires indemnity by the manufacturer to the seller for a "products liability
action" caused by a defective product. The Texas Supreme Court in Meritor concluded that this
language meant the manufacturer must indemnify and defend the seller even from allegations that
the seller was negligent. If the manufacturer must fully indemnify the seller in a products liability
action even when it is alleged that the seller's own negligence was a proximate cause of the plaintiff's
injury, it logically follows that the manufacturer must likewise fully indemnify a seller for a products
liability action even when more than one manufacturer of a product allegedly contributed to the
damages of the plaintiff. In each instance, the statute requires the manufacturer to indemnify the
distributor for the costs incurred by the distributor in a products liability action without regard to the
defective nature of the manufacturer's product. 
            Ansell and BD argue that they cannot fulfill this obligation because it would require them
to defend another manufacturer's product, and to require such would lead to absurd results. Of
course that same difficulty is presented to the distributor. What options are available to a distributor
when it has purchased similar products from different manufacturers and it is alleged that the
products have caused the injury? If any of the manufacturers refuse to provide the distributor a
defense concerning its product, and if no manufacturer provides an overall defense to the distributor,
the distributor must present its own defense, which will necessarily include a defense of the product
manufactured by the recalcitrant manufacturer. The distributor is likewise in a poor position to
attempt to defend the product manufactured by another. This statute, while not a model of
draftsmanship, appears to resolve this dispute by requiring the "manufacturer" of a defective product
alleged to have caused the injury to indemnify and hold harmless the distributor. Ansell and BD are
such manufacturers. The Legislature has elected to favor the innocent distributor over the
manufacturers of allegedly defective products. The Texas Supreme Court has analyzed the statute
in a light favorable to the innocent seller. Here, such an application results in requiring each
manufacturer of an allegedly defective product sold by an innocent distributor to assume a full
defense of the distributor or indemnify it from losses incurred.



            The manufacturer placed in the position of being required to indemnify or defend a seller
based on allegations of a products liability action which includes products sold by another party is
not without remedy. For instance, in this case the manufacturers, belatedly, attempted to implead
the other manufacturers as third parties to recover a right of contribution against the other
manufacturers. In the event that a manufacturer is required to indemnify the seller for more than the
damages for which it is responsible, the manufacturer would have the right of contribution against
other responsible manufacturers. A suit for contribution may be brought and considered timely even
if the original plaintiff's lawsuit against the contributing defendant would be barred by limitations. 
In re Martin, 147 S.W.3d 453, 458 (Tex. App.—Beaumont 2004, pet. denied). The right to recover
contribution accrues when one is subjected to a judgment or pays sums in settlement. Conroe Truck
& Tractor, Inc. v. Childs Truck Equip., Inc., 723 S.W.2d 207, 208–09 (Tex. App.—Beaumont 1986,
writ ref'd n.r.e.).
            We conclude Ansell and BD had the duty to indemnify or defend O&M even though O&M
distributed products of other manufacturers. 
2.         Did Ansell and/or BD Tender an Adequate Defense to O&M? 
            Having found that Ansell and BD were indeed obligated to indemnify O&M for its defense
costs, we must decide whether the manufacturers met their statutory obligations and agreed to
provide a defense to O&M, thereby obviating the need for O&M to incur litigation costs. 
            Ansell and BD argue that they have complied with their obligation to indemnify O&M in the
McCabe case by tendering a defense of the product each manufactured. O&M rejected the purported
offers because the offers did not include a defense of the entire products liability action. Ansell and
BD argue that to require them to defend the entire case would place them in a position of defending
a product manufactured by another company. They further argue that such a requirement would be
absurd and that a more reasonable construction of the statute would require the seller-distributor to
require each manufacturer to defend its own product. If that occurred, the seller would be fully
protected and there would be no gap in the product defense. Consequently, the offer to defend the
product manufactured by the respective manufacturer fulfilled their indemnity requirement and no
costs or attorney's fees were necessary by O&M.
            When O&M was served with McCabe's products liability lawsuit, O&M notified both Ansell
and BD and asked both manufacturers to defend the distributor.


 Ansell responded with a letter
saying it would defend any claim relating to Ansell's products, "provided we can agree upon an
appropriate method whereby Ansell Healthcare Products, Inc. only defends its natural rubber latex
gloves in this litigation." The letter states that a group of manufacturers was attempting to agree on
a procedure as to how they should respond to such requests. The letter further explained that it
would be prudent to wait until such an agreement had been proposed as to how such tenders of
defense should be addressed or, if no global agreement could be reached, then individual discussions
would occur as to whether Ansell may defend its product with respect to claims being made against
O&M for selling Ansell's gloves. Finally, the letter proposed deferring any further discussions until
the manufacturers and distributors could attempt a resolution regarding the distributors' tenders of
defense. Ansell claims it never received a response to this letter.
            BD also alleges that it tendered a defense to O&M and should not be obligated for the
attorney's fees O&M incurred. This defense emanates from letters and discussions that occurred over
time, from around 1995, when all relative parties began this mass product litigation. In a case
involving the same parties and the same alleged products liability in Pennsylvania, BD responded
to O&M's demand for defense by conditionally agreeing to defend and indemnify O&M. This
conditional defense was extended to O&M in latex glove cases to the extent that:
            1.         The plaintiff alleged exposure to BD latex gloves;
            2.         O&M was named as a party because it was alleged to have sold BD gloves to the
plaintiff's employers during the relevant time period; and
            3.         O&M produced documentation to establish that it sold BD gloves to the pertinent
party. 
            BD agreed to defend O&M to the extent that BD gloves were found to have caused the
plaintiff harm. This defense and indemnity would not extend to gloves manufactured by other
defendants. 
            Ansell and BD both moved for summary judgment in the trial court on the ground they had
offered to defend O&M and, therefore, discharged their duty under Section 82.002. These motions
were denied. Both appellants also maintain that they vigorously defended their respective products,
which amounted to a defense of O&M. 
            In support of this argument, Ansell and BD cite Burden, 332 F.Supp.2d 1029. That case
involved many of the same manufacturers and O&M, and also stemmed from products liability
litigation regarding latex gloves. In circumstances closely paralleling those presented here, the
Federal District Court found that offers by BD and Ansell to defend O&M to the extent O&M was
found to have sold BD or Ansell gloves amounted to an offer to defend O&M. 
            The Burden court found:
A fair reading of the letters shows that the manufacturers were willing to defend
Owens until it was proven that Burden did not use their gloves. Their offers met
their obligations under the law. In addition, their own defense is an implicit defense
of Owens. Its fees and costs were unnecessary because the manufacturers' offers of
defense were adequate. The manufacturers do not have to indemnify Owens.
Id. After analyzing the Meritor case, a precedent to which we are bound, it leads us to respectfully
disagree with the holding in Burden. In Meritor, the manufacturers argued that they had no
indemnity duty to the distributor because the plaintiffs alleged the distributor was negligent. As we
have previously discussed, the Texas Supreme Court did not agree with that argument, but instead
adopted the argument of the distributor that, so long as the negligence claim against the distributor
was a part of a products liability action, the manufacturer had the duty to indemnify the distributor. 
Since the statute requires a manufacturer to indemnify the distributor for damages incurred as the
result of a "products liability action," the Texas Supreme Court analyzed the statute to determine the
legislative intent of the meaning of "products liability action." Meritor, 44 S.W.3d at 90. The Texas
Supreme Court concluded that the phrase "products liability action" includes all direct allegations
against the seller that relate to a plaintiff's injury and excludes only those losses caused by the seller. 
Id. The court further stated that, whether the manufacturer's position is fair or not, it is simply not
what the statute provides. In essence, the Texas Supreme Court accepted the argument of the
distributor that a "products liability action" includes all claims properly joined as a part of the
product lawsuit. Id. at 89–90. Employing the same analysis as the Texas Supreme Court in Meritor,
we find that the "products liability action" in this case included the claim that multiple manufacturers
of latex gloves were responsible for McCabe's injuries. 
            It is clear that both Ansell and BD offered to defend their own product. However, neither
offered to defend the "products liability action" filed against O&M, which included a defense of the
entire proceeding. As we have found that Ansell and BD had the duty to indemnify O&M for the
products liability action against O&M and that they never offered to defend the entirety of the
products liability action, we hold their limited offers to defend only their own products did not fulfill
their indemnity duty under the statute. 
            The trial court found that Ansell and BD "at best offered only a partial defense." The trial
court based this finding on the "plain language" of Section 82.002 and the holdings in Meritor and
Freeman Fin. Inv. Co. v. Toyota Motor Corp., 109 S.W.3d 29 (Tex. App.—Dallas 2003, pet.
denied). We find the weight of binding authority supports the trial court's decisions, and overrule
this point. 
3.         Are Ansell and BD Jointly and Severally Liable for O&M's Costs to Defend Suit? 
            Ansell and BD argue that the trial court erred in finding them independently liable for O&M's
entire damages, thereby assigning joint and several liability to the two defendant manufacturers. 
Ansell and BD point out that joint and several liability was recognized in Landers v. E. Tex. Salt
Water Disposal Co., 151 Tex. 251, 248 S.W.2d 731 (1952), where the tortious acts of two or more
wrongdoers were found to have joined and produced one indivisible injury. Id. at 734. They argue
that, since there was no finding of wrongdoing in this case, such analysis does not apply. The
manufacturers further reason that joint and several liability is inappropriate because there is no
mechanism to apportion any damage award among the manufacturers as would be the case if the
provisions of Chapter 33 of the Texas Civil Practice and Remedies Code applied. That chapter
specifically states that nothing in Chapter 33 "shall be construed to affect any rights of indemnity
granted by any statute, by contract, or by common law." Tex. Civ. Prac. & Rem. Code Ann.
§ 33.017 (Vernon Supp. 2005). Likewise, Chapter 82 of the Texas Civil Practice and Remedies
Code has no provision for allocating the indemnity damages among multiple manufacturers. Ansell
and BD conclude that the Legislature never contemplated that one manufacturer would be held
responsible for all costs and fees incurred by a distributor when multiple manufacturers are involved. 
It is argued that the proper allocation of these damages would be a pro rata distribution of the
damages among all manufacturers named in the McCabe petition. 
            The manufacturers' argument has some logic and appeal. It is true that no party has been
found to have caused the underlying damages to McCabe which prompted this action.


 The damages
to O&M occurred in defending the McCabe lawsuit and are only recoverable by statutory
authorization, as such recovery would not be authorized in common law. Common law indemnity
was authorized when the wrongful conduct of one party subjected another party to liability and
recovery could only be for expenditures made to discharge the liability. See Humana Hosp. Corp.
v. Am. Med. Sys., Inc., 785 S.W.2d 144, 145 (Tex. 1990). However, the Legislature's Act granted
to seller-distributors remedies that were not previously available: i.e.—it applies regardless of the
outcome of the underlying case; it includes recovery of attorney's fees and costs; and no showing of
the manufacturer's liability to the underlying plaintiff is required. Ansell and BD argue that O&M
would be completely reimbursed by seeking its damages from each manufacturer and requiring each
to reimburse O&M for its pro rata share of the costs incurred. 
            Joint and several liability has been imposed when the negligence of two or more persons join
in producing a single indivisible injury even though there is no concert of activity or common duty. 
See Baylor Univ. v. Bradshaw, 52 S.W.2d 1094, 1100 (Tex. Civ. App.—Austin 1932), aff'd, 126
Tex. 99, 84 S.W.2d 703 (1935). In Landers, the Texas Supreme Court found that a major factor for
requiring joint and several liability was the onerous burden of proving the share each party
contributed to the injury. See Landers, 248 S.W.2d at 735. Here, O&M has suffered an indivisible
injury as a result of selling allegedly defective latex gloves made by several companies. The injury
caused O&M to incur costs in defending the litigation and in pursuing a statutory indemnity right. 
The statute contemplates that the distributor would be reimbursed for its costs. Requiring the
distributor to attempt to recover its costs from the many different manufacturers would place on the
distributor the burden of attempting to bring each such manufacturer into the litigation, the risk of
the insolvency, lack of jurisdiction, or other difficulties in enforcing its statutory right. 
            Which of the parties should bear the burden to implead all manufacturers and take the risk
that some may not be subject to jurisdiction or worse, might be in bankruptcy? The statute does not
specifically provide the answer. We believe the language of the statute indicates that the Legislature
chose to favor the seller in the enforcement of these rights. The statute is worded broadly, requiring
manufacturers to pay all damages incurred by the seller. The distribution of these damages among
all relevant manufacturers may be accomplished by contribution claims filed by the manufacturers. 
            We acknowledge that there is no direct authority that manufacturers are jointly and severally
liable for indemnity to the seller, but we believe the law supports this conclusion based on our
consideration of a number of sources. As we have previously noted, joint and several liability
generally arises when the injury cannot be attributed with reasonable certainty to individual entities. 
Id. at 734. For joint and several liability to attach, it is not required that the damages are to
compensate for personal injury or pollution. See Marcus, Stowell & Beye Gov't Secs. v. Jefferson
Inv. Corp., 797 F.2d 227, 233 (5th Cir. 1986) ("MSB suffered only a single injury -- the loss of a
commission to be earned by locating a purchaser for Jefferson's mortgage portfolio."); Am. Motorists
Ins. Co. v. Briggs, 514 S.W.2d 233, 236 (Tex. 1974) ("If coverage exists under two or more policies,
liability on the policies is joint and several . . . ."). Ansell and BD argue that joint and several
liability only attaches in tort cases where a party is found to be a wrongdoer, and since this case
involves liability only for a statutory cause of action, joint and several liability is inapplicable. The
San Antonio court has faced an analogous situation. In Garcia v. Am. Physicians Ins. Exch., a
physician sued his insurance companies for failing to defend him in a medical malpractice case. 812
S.W.2d 25 (Tex. App.—San Antonio 1991), rev'd on other grounds, 876 S.W.2d 842 (Tex. 1994).
The San Antonio court held that the case was a "statutory cause of action based on APIE's failure to
defend, negotiate and settle, and the jury's findings that that failure constituted violations of article
21.21. The failure to defend, negotiate and settle by Dr. Garcia's insurance companies constituted
an indivisible injury to him that cannot be apportioned on a pro rata basis. APIE's liability is joint
and several." Id. at 31–32. Likewise, here, the cause of action is a statutory one for failure to defend
or indemnify O&M, and it constitutes a violation of Section 82.002 of the Texas Civil Practice and
Remedies Code. As in Garcia, the failure by the manufacturers to defend or indemnify O&M
constituted an indivisible injury that cannot be apportioned on a pro rata basis any more than the loss
in Garcia could be apportioned to the insurance companies involved. We recognize that the Texas
Supreme Court found that one insurance company did not fail to defend Garcia, but the Texas
Supreme Court's holding did not undermine or address the reasoning of the San Antonio court of
appeals that a statutory cause of action for the failure to defend another when one had a duty to do
so results in joint and several liability for the offenders. After reviewing the statute, the Texas
Supreme Court's application and analyses of it, and the other authorities cited above, we find the trial
court did not err in assigning joint and several liability to the defendant manufacturers. 
4.         Were O&M's Attorney's Fees Reasonable and Necessary? 
            The trial court awarded a total recovery of $73,911.42 for services before June 13, 2002 (the
date of O&M's dismissal with prejudice from the products liability suit), and $310,627.90 for those
afterward. This totaled $384,539.32, but the court deducted $32,811.00 for a settlement, leaving
$351,728.32 for the attorney's fees, paralegal fees, and expenses. The trial court also awarded
$65,000.00 for appellate fees. 
            The attorney's fee award in this case is, to say the least, a large one. Assuming the
reasonableness of $73,911.42 in attorney's fees for the underlying products liability suit,


 could
O&M then incur another $310,627.90 in attorney's fees simply to collect the initial $73,911.42,
especially where Section 82.002 virtually assured O&M of some right to indemnity in this action? 
            This instant suit, involving O&M's right to indemnification pursuant to Section 82.002, was
tried before the trial court. On April 27, 2004, O&M presented testimony from Tidwell, who had
reviewed the attorney billing records of O&M. Tidwell testified that O&M's fees were reasonable
and necessary. According to Tidwell, even if O&M was an innocent seller, and could count on
indemnification pursuant to Section 82.002, the same amount of time and effort would go into
monitoring O&M's defense, that is, monitoring what the manufacturers were doing to defend
McCabe's suit. Because McCabe's allegations included negligence, and these allegations were
directed at O&M as well as the manufacturers, there was a possibility, according to Tidwell, all or
most of the manufacturers could go bankrupt, and either this or the chance of being found negligent
exposed O&M to liability. 
            Josephson, who testified for Ansell and BD as their expert on attorney's fees, stated that he
did not analyze O&M's fees according to the Arthur Andersen


 elements. Josephson explained that
he did not find O&M's attorney's fees of $73,911.42 for the initial products liability suit to be
reasonable and necessary. Josephson also opined that, based on Section 82.002's indemnification
provision, O&M almost certainly faced no prospect of liability in the underlying products liability
suit. To support that assertion, Josephson referenced, and the manufacturers introduced into
evidence, an article by one of O&M's attorneys from a legal publication describing various states'
indemnification statutes and strategies for distributors. Josephson pointed out that, for the initial
products liability suit, O&M's national counsel had billed around $30,000.00, compared with the
$73,880.00 billed by the local firm. In Josephson's opinion, counsel for O&M had only to answer
McCabe's petition, reply to any discovery, and attend depositions of its clients. 
            BD was dismissed, without prejudice, from the underlying products liability suit in December
2001; O&M was dismissed, with prejudice, in June 2002. In the indemnity action, over a period of
time, the parties all filed a substantial amount of requests for production, notices of depositions, and
motions for summary judgment, which were then opposed with requisite briefs in support of the
various positions. The clerk's record in this case, spanning filings from August 2002 through trial
in the spring of 2004, comprises nine volumes. There were five pretrial hearings, which generally
involved discussion and argument about discoverable materials, especially maintaining the
confidentiality of each parties' attorney billing records. 
            Additionally, several depositions were taken, including some of the partners in the law firm
representing BD. There is also reference to depositions being taken of one or both of the attorneys
representing O&M, one of whom officed in Virginia. While it certainly appears to this Court that
Section 82.002 provided a clear right to O&M for indemnification, we also acknowledge there were
some legitimate questions about the extent of that right in the current situation. For example, it can
be argued that none of the Texas Supreme Court's cases applying Section 82.002 specifically address
multiple manufacturers or the issue of joint and several liability. Likewise, the Texas Supreme Court
has not directly addressed exactly what a manufacturer must do to "tender a defense" following a
distributor's request. As mentioned, there were five hearings from December 2002 to December
2003, covering depositions of attorneys, the issue of privilege as regarded attorney billing statements,
and general scheduling problems among the many lawyers representing the several defendants. 
a.         Legal Sufficiency
            Section 82.002(a) states that a "manufacturer shall indemnify . . . a seller against loss arising
out of a products liability action." Tex. Civ. Prac. & Rem. Code Ann. § 82.002 (emphasis added). 
A loss includes reasonable attorney's fees. The trial court properly granted an award, as the statute
requires. However, we review an amount awarded for legal and factual sufficiency. See Bocquet
v. Herring, 972 S.W.2d 19, 20 (Tex. 1998). Attorney's fees must be based on some statutory or
contractual authority. Holland v. Wal-Mart Stores, Inc., 1 S.W.3d 91, 95 (Tex. 1999). In
determining whether attorney's fees are reasonable, the trial court should consider the factors
discussed in Arthur Andersen & Co., 945 S.W.2d at 818. When a party or parties without the burden
of proof, here, Ansell and BD, challenge the legal sufficiency of the evidence, an appellate court will
consider all the evidence in the light most favorable to the prevailing party, indulging every
reasonable inference in that party's favor. Associated Indem. Corp. v. CAT Contracting, Inc., 964
S.W.2d 276, 285–86 (Tex. 1998). 
            Even if we disagree with the trial court's findings, we cannot reverse if the above standard
is met. Looking at the evidence in the light most favorable to O&M, it is clear there was evidence
to support the trial court's findings. The trial court had extensive, detailed billing records from
O&M's attorneys. As pointed out above, the litigation over indemnification went on for two years,
and all parties filed numerous, and in many cases voluminous pleadings, motions, and briefs. 
Common prudence instructs us that spending in excess of $300,000.00 in attorney's fees to collect
$73,911.42 does not make economic sense. However, we must consider the evidence in a light most
favorable to O&M. After carefully reviewing the record, we are not persuaded that counsel for
O&M specifically overbilled or overworked the case. It appears both sides to this controversy have
been litigating this battle on many fronts for a number of years. Each appears willing to spare no
expense to see that justice prevails. We find the evidence legally sufficient to support the trial court's
ruling on O&M's attorney's fees. 
b.        Factual Sufficiency
            A court of appeals can set aside the verdict only if it is so contrary to the overwhelming
weight of the evidence that the verdict is clearly wrong and unjust. Cain v. Bain, 709 S.W.2d 175,
176 (Tex. 1986). The court of appeals is not a fact-finder. Accordingly, the court of appeals may
not pass on the witnesses' credibility or substitute its judgment for that of the jury, even if the
evidence would clearly support a different result. Mar. Overseas Corp. v. Ellis, 971 S.W.2d 402,
407 (Tex. 1998). If we find the evidence insufficient, we must clearly state why the jury's or, here,
the trial court's, finding is factually insufficient or is so against the great weight and preponderance
of the evidence as to be manifestly unjust. Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex.
1986). In so doing, we do not pass on the credibility of the witnesses, and we do not substitute our
opinion for that of the trier of fact, even if there is conflicting evidence on which a different
conclusion could be supported. Clancy v. Zale Corp., 705 S.W.2d 820, 826 (Tex. App.—Dallas
1986, writ ref'd n.r.e.).
            Once again, whether we agree with the trial court's finding is irrelevant. We cannot say that
evidence supporting O&M's claimed attorney's fees is so against the great weight and preponderance
of the evidence as to be manifestly unjust. Although we may have come to a conclusion different
from that of the trial court, such is not within our power here. Having conducted our own review
of the attorney's billing records, as well as the ample filings by all parties over two years of litigation,
we must conclude that the trial court's conclusions and findings regarding attorney's fees are
supported by factually sufficient evidence, and therefore overrule this point of error. 
c.         Attorney's Fees for Appeal
            However, we do take issue with the $65,000.00 approved by the trial court for attorney's fees
on appeal. This amount included: $25,000.00 from notice of appeal through briefing; $7,500.00 to
prepare and present oral argument to this Court of Appeals; $15,000.00 to prepare a petition for
review to the Texas Supreme Court; $10,000.00 to brief the case for the Texas Supreme Court; and
$7,500.00 to prepare and present oral argument before the Texas Supreme Court. The only
testimony supporting these figures comes from Tidwell, who testified that he estimated eighty hours
would be necessary for "initial briefing post-trial," and that such would be billed at $300.00 per hour. 
Even though O&M introduced an exhibit indicating attorney's fees of $65,000.00 for the appeal,
Tidwell did not specifically testify that $65,000.00 was a reasonable and necessary fee on appeal. 
He merely agreed with counsel that the exhibit was an "analysis taken through the Supreme Court"
and the basis for it was "basically what you just told us." There is substantial evidence,
acknowledged by Tidwell, that O&M's attorneys never charged more than $190.00 per hour. 
(Tidwell did testify that rates for such complex litigation were usually in the range of $300.00 to
$500.00, depending on whether the particular attorney was a partner or associate; and O&M
introduced one of its responses to the requests for disclosure containing Tidwell's estimate that
O&M's "fees and expenses are more reasonably calculated" at rates of $300.00 and $275.00 per hour
for their senior attorneys.) One of O&M's attorneys provided an affidavit opining an appeal would
incur $10,000.00 in attorney's fees to the intermediate court, then another $7,500.00 to the Texas
Supreme Court. Josephson also pointed out that O&M's attorneys did not bill more than $200.00
per hour. 
              The trial court's finding on reasonable and necessary attorney's fees for appeal of this case
is so contrary to the overwhelming weight of the evidence that the verdict is clearly wrong and
unjust. Cain, 709 S.W.2d at 176. Tidwell's testimony will support a maximum recovery through
the Court of Appeals of $24,000.00. The only competent evidence supporting attorney's fees for
appeal to the Texas Supreme Court is that O&M's attorneys admitted by affidavit that $7,500.00 was
a reasonable fee for an appeal to the Texas Supreme Court. We find the only evidence to support
an award for attorney's fees on appeal is $24,000.00 for an appeal to the Court of Appeals and an
additional $7,500.00 for an appeal to the Texas Supreme Court. Therefore, the trial court's judgment
for appellate fees is contrary to the evidence and was clearly wrong. 
5.         Did Trial Court Abuse Discretion in Overruling Ansell's Motion to Join Other
Manufacturers?

            As we have said, this case was heard by the trial court April 27 and May 19, 2004, in addition
to several pretrial hearings which occurred from December 2002 to December 2003. Ansell filed
a motion to join other manufacturers as third-party defendants in the indemnification suit February
23, 2004. The trial court denied Ansell's motion March 20, 2004. The trial court cited as grounds
that the motion was untimely. 
            Before a case is called for trial, additional parties, necessary or proper parties to the suit, may
be brought in, either by the plaintiff or defendant, on such terms as the trial court may prescribe, but
neither at a time, nor in a manner which would unreasonably delay the trial of the case. Tex. R. Civ.
P. 37; Akinwamide v. Transp. Ins. Co., 147 S.W.3d 623, 625 (Tex. App.—Corpus Christi 2004, no
pet.) (motion to join other parties filed seventeen days before trial overruled; held not abuse of trial
court's discretion). There is nothing in the record to indicate that the identities of the other
manufacturers were unknown to Ansell. The record further does not indicate that the issue of those
manufacturers' potential liability was unknown to Ansell. See Jones v. Smith, 157 S.W.3d 517, 523
(Tex. App.—Texarkana 2005, pet. denied) (motion filed one day before trial, and information
necessary to pursue the motion had been known since filing of suit, one year earlier). Based on the
length of litigation before this matter went to trial, and the fact that the issue of potential contribution
from other manufacturers was or should have been evident to Ansell, we cannot say the trial court
abused its discretion in finding the motion untimely. 
6.         Conclusion
            We believe that Ansell and BD had a duty to indemnify O&M under the statute. We find the
attempted limited defense was insufficient to fulfill the indemnity requirements under the statute. 
There is legally and factually sufficient evidence to support the findings of the trial court concerning
the attorney's fees assessed jointly and severally against the manufacturers. We find the evidence
factually insufficient regarding appellate attorney's fees. We affirm the judgment, conditioned on
a remittitur of $33,500.00 of the $65,000.00 appellate attorney's fee award. In all other respects, the
judgment is affirmed. In the event the remittitur is not filed with this Court within twenty (20) days
from the date of this opinion, we remand the case to the trial court for a new trial. See Tex. R. App.
P. 46.3.



                                                                        Jack Carter
                                                                        Justice
 
Date Submitted:          December 14, 2005
Date Decided:             March 31, 2006